NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

REX DISPOSABLES, DIVISION OF DHJ
INDUSTRIES, INC.,   Respondent.

No. 73-1785.

United States Court of Appeals,
Fifth Circuit.

May 20, 1974.

Elliott Moore, Deputy Associate Gen.
Counsel, N. L. R. B., Washington, D. C.,

Elmer P. Davis, Director, Region 16, N. L. R. B., Fort Worth, Tex., Jonathan G. Axelrod, Washington, D. C., for petitioner.

Richard E. Miller, Ronald B. Bianchi, New York City, for respondent.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

Rex Disposables, a division of DHJ Industries, Inc., manufactures disposable hospital garments and other related items at a small facility in Quanah, Texas. On January 31, 1972, the Textile Workers Union of America, AFL–CIO–CLC filed a charge claiming that Rex violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act by discharging five employees because of their union activities. The Union amended its charge on March 27, 1972 to claim the wrongful layoff of the same five employees. Under date of March 29, 1972, the Regional Director of the NLRB advised the Union by letter that:

> "As a result of the investigation, it does not appear that there is sufficient evidence of violation of Section 8(a)(3) of the Act. More particularly, the investigation disclosed insufficient evidence to sustain the burden of proving that Asa L. Greene, Barbara Mayes, Shirley Wade, Helen Stuart and Peggy Johnson were laid off for reasons other than lawful, economic considerations. I am, therefore, refusing to issue a complaint on the 8(a)(3) portion of the charge. However, the 8(a)(1) portion of the charge is continued before us for further action."

The Regional Director issued a complaint on April 12, 1972, which alleged that Rex violated Section 8(a)(1) by threat of layoffs for union activities, coercive interrogation of employees regarding union activities, and surveillance of union meetings.

A hearing was held on May 24 and 25, 1972. By decision dated September 11, 1972, the Administrative Law Judge found that Rex had engaged in the unfair labor practices alleged in the complaint. On February 8, 1973, the Board reversed the Administrative Law Judge's conclusion that Rex had threatened to lay off employees based upon union activities, but affirmed the rest of his rulings, findings and conclusions. The Board modified the Administrative Law Judge's proposed order to reflect its reversal on the issue of the threat of layoffs. As modified, the order requires that Rex cease and desist from coercive interrogation, surveillance and certain other activities. The order requires also the posting of a Notice to Employees, and a report on compliance. We enforce the Board's order.

I.

Rex claims the Regional Director exceeded his authority by issuing the complaint in this case after dismissing the specific charges filed by the Union. The Board contends that the complaint was closely related to the original specific charge and the amended charge of the Union, and that the Regional Director therefore acted within his statutory authority under 29 U.S.C. § 160(b).

On a form entitled "Charge Against Employer," in a blank space provided for the "Basis of the Charge . . . ," the Union alleged the discriminatory layoff of five employees because of their union activities. At the bottom of the space allowed to detail the basis of the charge, the following sentence appears, apparently as a part of the printed form: "By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed by Section 7 of the Act." As has been stated, the Regional Director decided that there was insufficient evidence to issue a complaint alleging that the layoffs violated the Act, but nonetheless did issue a complaint alleging that Rex had engaged in "other acts" which vio-

lated Section 8(a)(1). These included a threat of layoffs for union activities, coercive interrogations, and surveillance of union meetings.

In NLRB v. Fant Milling Co., 1959, 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243, the Supreme Court held that in formulating a complaint and in finding a violation of Section 8 of the National Labor Relations Act, the Board may take cognizance of events occurring subsequent to the filing of the charge upon which the complaint is based. The Court justified its decision in the following manner:

"A charge filed with the Labor Board is not to be measured by the standards applicable to a pleading in a private lawsuit. Its purpose is merely to set in motion the machinery of an inquiry. Labor Board v. I. & M. Electric Co., 318 U.S. 9, 18, [63 S.Ct. 394, 400, 87 L.Ed. 579]. The responsibility of making that inquiry, and of framing the issues in the case is one that Congress has imposed upon the Board, not the charging party. To confine the Board in its inquiry and in framing the complaint to the specific matters alleged in the charge would reduce the statutory machinery to a vehicle for the vindication of private rights. This would be alien to the basic purpose of the Act. The Board was created not to adjudicate private controversies but to advance the public interest in eliminating obstructions to interstate commerce, as this Court has recognized from the beginning. Labor Board v. Jones & Laughlin, 301 U.S. 1, [57 S.Ct. 615, 81 L.Ed. 893].

"Once its jurisdiction is invoked the Board must be left free to make full inquiry under its broad investigatory power in order properly to discharge the duty of protecting public rights which Congress has imposed upon it. There can be no justification for confining such an inquiry to the precise particularizations of a charge. For these reasons we adhere to the views expressed in National Licorice Co. v. Labor Board [309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799]."

360 U.S. at 307–309.

▆ Relying in part upon the above-quoted language from *Fant Milling*, this Court has stated that "the Board has considerable leeway to found a complaint on events other than those specifically set forth in the charge, the only limitation being that the Board may not get 'so completely outside . . . the charge that it may be said to be initiating the proceeding on its own motion . . . .' NLRB v. Kohler Co. [7 Cir. 1955, 220 F.2d 3]." Texas Industries, Inc. v. NLRB, 5 Cir. 1964, 336 F.2d 128, 132. Also see NLRB v. International Union of Operating Eng., Local 925, 5 Cir. 1972, 460 F.2d 589, 596; NLRB v. Reliance Steel Products Co., 5 Cir. 1963, 322 F.2d 49, 53. General allegations, such as that the employer "by other acts and conduct . . . interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in section 7 of the Act," are legally sufficient to cause inclusion of these "other acts" in the complaint if those acts are sufficiently related to the specific acts alleged. NLRB v. Central Power & Light Co., 5 Cir. 1970, 425 F.2d 1318, 1320. The requirement of a sufficient relationship between the charge and the complaint does not necessarily mean a "close" relationship; "the relationship need be close enough only to negate the possibility that the Board is proceeding on its own initiative rather than pursuant to a charge." NLRB v. Central Power & Light Co., *supra*, at 1321 n. 3.

▆ The relationship between the specific charge and the complaint in this case is more than sufficient to convince us that the Board was not acting on its own initiative. The Union specifically charged discriminatory layoffs of five employees on January 28. The complaint alleged that on January 26 the plant manager had threatened layoffs because of union activities, and that Rex had engaged in coercive interrogation of

employees and surveillance of union meetings on January 27 and 28. It is easily understandable how a close scrutiny of the facts surrounding the January 28 layoffs could lead to the discovery of the unfair labor practices alleged in the complaint. Investigation of the employer's motivation in laying off certain employees would usually involve inquiry into whether the employer had recently threatened to lay off employees because of their union activities. A thorough probe of the Union's charges might also include inquiry into whether the employer had engaged in interrogation of employees or surveillance of union meetings in order to identify employees involved in union activities.[1] As suggested by the Board, employer identification of union supporters would be a necessary step for discriminatory treatment of particular employees. Thus, the specific allegations in the charges and the allegations in the complaint were closely related in time, and the evidence used as a basis for the complaint would naturally have been gathered during a proper investigation of the charges.

## II.

■ Rex urges that it was denied a fair hearing because the Administrative Law Judge denied all requests for discovery. On oral argument in this Court, the attorney who appeared for Rex at the hearing on the complaint conceded that he was not surprised by the testimony about surveillance. On the assumption that Rex therefore suffered no prejudice as to the surveillance testimony, we examine the denial of discovery

only as relevant to the alleged coercive interrogations.

Paragraph 7(a) of the Complaint provided as follows:

"(a) On or about the dates set opposite their respective names, Respondent, by its following-named supervisors and agents, orally interrogated employees at its Quanah plant regarding their Union membership, activities and desires:

"Paul Ballard          January 27, 1972
"Virginia Greening    January 27, 1972
                              January 28, 1972"

(App. 339.) Rex claims that it was unable to ascertain prior to the hearing exactly who was interrogated. This claim is believable. Rex employed about sixty persons during the days in question; the alleged interrogations were relatively brief and occurred in the general working area of the plant; and the complaint was issued about two and one-half months after the conversations in question.

Rex sought to discover more about the alleged interrogations through a variety of means—a demand for a bill of particulars, a request made a few days before the hearing to review witnesses' statements, a similar request made after the hearing began but before testimony was taken, and a motion made at the beginning of the hearing to take the depositions of witnesses. All requests for discovery were denied.

■ Justice under law is, of course, the ultimate goal of this Court. We exercise a broad discretion to require such proceedings to be had as may be just un-

---

1. The testimony of employee Garrard suggests how investigation of the union charge might lead to discovery of coercive interrogations. The Union alleged the wrongful discharge or layoff of five employees—Ada Greene, Barbara Mayes, Shirley Wade, Helen Stewart and Peggy Johnson. Garrard testified that Plant Manager Ballard mentioned Shirley Wade as someone who might approach Garrard about the Union. Garrard also testified that Supervisor Greening told him she thought Barbara Mayes, Helen

Stewart and Liz Winter were involved in union activities. In investigating the charge, the Board obviously would have wanted to learn exactly what the plant manager and supervisor had said, if anything, about the five employees in question. Questioning of Garrard would have uncovered the references to Mayes, Stewart and Wade. This questioning would also have revealed the apparent coercive nature of the conversations of Ballard and Greening with Garrard.

der the circumstances. 28 U.S.C. § 2106; cf. Rule 1 of F.R.Civ.P.[2] We agree with the Fourth Circuit that under some circumstances the Board's decision not to provide discovery may result in unfairness. Firestone Synthetic Fibers Co. v. NLRB, 4 Cir. 1967, 374 F.2d 211, 214. This Court is committed to the doctrine that when good cause is shown to the Board it should permit discovery in order that the rights of all parties may be properly protected. NLRB v. Safway Steel Scaffold Co. of Georgia, 5 Cir. 1967, 383 F.2d 273; NLRB v. Miami Coca-Cola Bottling Co., 5 Cir. 1968, 403 F.2d 994, 996. Also see NLRB v. Southern Materials Co., 4 Cir. 1967, 345 F.2d 240, 244. We adhere to that doctrine despite the able but highly technical opinion of the Second Circuit to the contrary in NLRB v. Interboro Contractors, Inc., 2 Cir. 1970, 432 F.2d 854. The function of judges is to administer justice without respect to persons. 28 U.S.C. § 453. They must refuse to enforce administrative orders which they find to be unjust or the product of unjust administrative procedures or policies.

Whether or not the Administrative Law Judge erred in refusing to allow any discovery, review of the record convinces us that Rex suffered no actual prejudice as a result of such refusal.

Garrard and Poole were the two allegedly interrogated employees whose names would have been secured through discovery. Garrard testified concerning brief conversations with Greening and Ballard. Poole testified about a series of short exchanges with Greening. Rex had an opportunity to cross-examine both Garrard and Poole on the first day of the hearing,[3] and did so vigorously. From the record, it appears that Greening, who was present at all the conversations in question, remained in the courtroom while Garrard and Poole testified, and she presumably was able to suggest questions to be asked during the cross-examination of these witnesses. Rex did not present its case until the second day of the hearing. The attorneys for Rex therefore had overnight to talk with witnesses or otherwise investigate the conversations described by Garrard and Poole. Greening and Ballard, the only other participants in these conversations, both testified for Rex, and contradicted the testimony given by Garrard and Poole. We also note that at the beginning of the hearing, the Administrative Law Judge advised the attorneys for Rex as follows: "Well, if you are surprised [by evidence offered by the General Counsel] you let me know and we will see what we can do." Rex did not avail itself of this offer during the

2. Professor Davis suggests that, "Federal courts might well follow the California Supreme Court in its 'common law' holding that an agency must provide prehearing discovery even in absence of statutory requirement. Shively v. Stewart, 65 Cal.2d 475, 55 Cal.Rptr. 217, 421 P.2d 65 (1966)." Davis, Administrative Law Treatise 1970 Supp. § 8:15. In the case cited by Professor Davis, Chief Justice Traynor, writing for the Supreme Court of California en banc, held that physicians charged in an administrative disciplinary proceeding with criminal abortion were entitled to prehearing discovery of statements of women and their husbands and to the production of documents of which the physicians did not have copies. In his opinion Chief Justice Traynor noted that the California Administrative Procedure Act provided for depositions, "not for the purpose of discovery, but to secure evidence for

use at the hearing." Continuing, Chief Justice Traynor opined:

"The Legislature's silence with respect to prehearing discovery in administrative proceedings does not mean, however, that it has rejected such discovery. Instead, * * * it has left to the courts the question whether modern concepts of administrative adjudication call for common law rules to permit and regulate the use of the agencies' subpoena power to secure prehearing discovery." 421 P.2d at 67.

See also Grog House v. Oregon Liquor Control Commission, Or.App.1973, 507 P.2d 419, 422; Viculin v. Department of Civil Service, 1971, 386 Mich. 375, 192 N.W.2d 449, 463.

3. The hearing began on May 24, 1972. The conversations in question occurred on January 27 and 28. Thus, there was less than four months between the alleged coercive interrogations and the hearing.

hearing. We conclude that the denial of its requests for discovery resulted in no actual prejudice to Rex.

## III.

 Rex claims that the evidence does not support the Board's findings that it violated Section 8(a)(1). We disagree.

At the hearing, former employee Garrard testified that on January 27, while Plant Manager Ballard was present, Supervisor Greening asked him if anyone had approached him in the building about union activities, and that Ballard had then commented that employee Wade might approach him about the Union. Garrard further stated that on January 28 Greening asked him if he had overheard any more names of ladies involved in union activities or where union meetings were being held, and said that Rex would be faithful to employees who were faithful to Rex. Finally, Garrard testified that on January 31 Greening asked him if he would sign an affidavit that Wade had approached him in the building about union activities. Employee Poole testified that on January 27, Greening asked her what she had learned at the union meeting the night before, and what the union man had said about transfers of employees within the plant. Although Ballard and Greening contradicted the testimony of Garrard and Poole, the Administrative Law Judge credited the testimony of Garrard and Poole over that of Ballard and Greening where there were conflicts, and found that the interrogations were coercive. Such resolutions of the conflicts in testimony were not unreasonable, and were accepted by the Board. Under these circumstances, it is not our function to overturn them. NLRB v. Varo, Inc., 5 Cir. 1970, 425 F.2d 293, 297–298. Accepting as true the testimony of Garrard and Poole, there was sufficient evidence to support the Board's findings.

On the issue of surveillance, the General Counsel introduced evidence that on January 27 Supervisor Greening and her husband sat in their car for at least twenty minutes at a store parking lot across the highway from a motel room where the Union was holding a meeting. Several employees testified that while at the meeting they could discern the Greenings in their car. On January 28, Plant Manager Ballard parked his pickup truck in a lot across from the motel and was observed sitting in the truck by employees attending a union meeting at the motel room.[4] Although the Greenings and Ballard testified that they were not engaged in surveillance, there was sufficient evidence to support a finding of surveillance. See NLRB v. Standard Forge & Axle Co., 5 Cir. 1969, 420 F.2d 508 and cases cited therein.

For the reasons stated, the Board's order is

Enforced.

---

4. From the testimony of witnesses, and after his own view of the parking lots and motel, the Administrative Law Judge concluded that each supervisor parked where he could see the room and recognize employees as they entered.