**G.W. GALLOWAY COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 86–1540.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1987.

Decided Sept. 9, 1988.

Lee T. Paterson, Los Angeles, Cal., for petitioner.

Michael D. Fox, Attorney, N.L.R.B., of the bar of the District of Columbia Court of Appeals, pro hac vice, by special leave of Court, with whom Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, and Linda Dreeben, Attorney, N.L.R.B., were on the brief, for respondent. Peter Winkler, Attorney, N.L.R.B., Washington, D.C., also entered an appearance for respondent.

Before ROBINSON, STARR and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

G.W. Galloway Company (Galloway) petitions this court to review and set aside a cease and desist order issued against it by the National Labor Relations Board[1] on the ground that the Board strayed beyond the jurisdictional boundaries set out in Section 10(b) of the National Labor Relations Act.[2] We agree that on the facts of this case the Board overreached, and accordingly we annul the Board's order.

## I. The Factual Background

Local 420 of the International Brotherhood of Teamsters filed an unfair labor practice charge[3] against Galloway, alleging that its firing of Paul Armendariz, an employee, violated Sections 8(a)(1) and (3)

---

1. The Board submits a cross-application for enforcement of the order.

2. 29 U.S.C. § 160(b) (1982).

3. Joint Appendix (J.App.) 29.

of the Act.[4] The charge was typed on a preprinted form supplied by the Board. In the space provided for the specifics of the charge, the union stated that Galloway "discriminatorily discharged Paul Armendariz because of his activities on behalf of Teamsters Local 420 or because of his other protected concerted activities." [5] Printed on the bottom of the form was a statement, appearing on all such forms provided by the Board, that "[b]y the above and *other acts*, the above-named employer has interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act." [6] The Board investigated the union's allegation of improper discharge, but it dismissed the charge without filing a complaint concerning the incident.

During the course of the investigation of the charge, however, the Board became aware of another incident at the Galloway plant that it believed to have been in contravention of Section 8(a)(1).[7] On the day after Armendariz was discharged, approximately 25 Galloway employees, unhappy with wages and benefits, commenced a strike and formed a picket line in front of the plant. When James J. Galloway, the president of the company, arrived at the plant, he indicated to the striking employees that he was willing to discuss their grievances individually, but that he would not meet with them as a group. He also warned that any employee who did not return to work would be terminated and replaced. Faced with this ultimatum, the employees conferred and returned to work.[8]

The Board issued a complaint averring that through the statements made to the strikers, Galloway had impermissibly threatened them with termination for engaging in protected concerted activity in violation of Section 8(a)(1) of the Act.[9] Neither the union nor any of the employees involved in the strike ever filed a charge concerning this incident, nor was the union's charge amended to include it. After a hearing, an administrative law judge dismissed the Board's complaint, concluding that a prerequisite to issuance of a complaint under Section 10(b)—relationship of the allegations in the charge and those in the complaint—was absent in this case.[10]

Without specifically addressing the holding that the charge and the complaint were unrelated, the Board reversed on the ground that the administrative law judge had "failed to consider and apply long standing precedent." [11] Although the Board made oblique reference to a requirement in its case handling manual that the complaint contain only allegations " '*related to the specifications of the charge*,' " [12] it claimed that under this precedent the preprinted language in the charge form, stating that the company had engaged in "other acts" of interference with Section 7 rights, was sufficient to allow the Board to institute the complaint.[13] After disposing of this procedural challenge, the Board found that Galloway had violated the Act through the action of its president, and issued an accompanying cease and desist order.[14]

## II. THE REQUIREMENTS OF SECTION 10(b)

In relevant part Section 10(b) provides:

4. 29 U.S.C. § 158(a)(1), (3) (1982).

5. J.App. 29.

6. *Id.* (emphasis added).

7. The Board has not disclosed how it learned of this. Part of the present dispute concerns the propriety of the Board's quashing of a subpoena duces tecum served by Galloway on the investigating field attorney in an effort to obtain this information. Our disposition of this case renders consideration of that matter unnecessary.

8. *G.W. Galloway Co.*, 281 N.L.R.B. No. 38, at 4 (1986).

9. J.App. 31–32.

10. *G.W. Galloway Co., supra* note 8, 281 N.L.R.B. No. 38, app. 4–6.

11. *Id.* at 3.

12. *Id.* at 3 n. 2 (quoting National Labor Relations Board Casehandling Manual § 10064.5) (emphasis in original).

13. *Id.*

14. *Id.* at 4–6.

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board ... shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect....[15]

The Board concedes that this section obliges it to await a charge before it may initiate an investigation or issue a complaint.[16] It also acknowledges that the mere filing of a charge against a party does not give the Board unlimited power to pursue all possible violations of the Act which that party may have committed.[17] The Board contends, however, that the "other acts" language printed on the Board-supplied charge form is "legally sufficient to support a complaint alleging infringements of Section 8(a)(1) that were not specifically stated in the charge."[18] The Board further asserts that if a factual relationship between the allegations in the charge and those in the complaint is necessary to satisfy the strictures of Section 10(b), that requirement is met in the present case.[19]

■ We disagree with both of the Board's arguments. The legislative history and judicial interpretation of Section 10(b) make clear that the allegations in the Board's complaint must be " 'related to' "[20]

those in the charge. This rules out the thesis that the "other acts" language alone can serve to broaden the permissible scope of a complaint. Moreover, we have searched in vain for the necessary factual relationship between the discharge and the strike.[21]

### III. The Legislative History

The bill that eventually became the National Labor Relations Act was introduced by Senator Wagner at the second session of the Seventy-third Congress.[22] It originally contained this language:

Whenever any member of the Board, or the executive secretary, or any person designated for such purpose by the Board, shall have reason to believe, from information acquired from any source whatsoever, that any person has engaged in or is engaging in any such unfair labor practice, he shall in his discretion issue and cause to be served upon such a person a complaint stating the general nature of the charges in that respect....[23]

This provision was later amended to confer the power to initiate charges upon the Secretary of Labor alone.[24] Still later in the Seventy-third Congress, a Senate joint reso-

---

15. 29 U.S.C. § 160(b) (1982).

16. Brief for Respondent at 8.

17. *Id.* at 6.

18. *Id.*

19. *Id.* at 8.

20. *NLRB v. Fant Milling Co.,* 360 U.S. 301, 307, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243, 1248 (1959) (quoting *National Licorice Co. v. NLRB,* 309 U.S. 350, 369, 60 S.Ct. 569, 579, 84 L.Ed. 799, 813 (1940)).

21. We note the Board's omission in its decision to undertake any analysis concerning a factual relationship between Armendariz's discharge and the employees' strike. This suggests that the Board may have relied solely on the "other acts" language to support its holding. In its briefs and at oral argument in this court, however, the Board contended that the two incidents were factually related under the standard applied in *NLRB v. Fant Milling Co., supra* note 20, and its progeny. See Brief for Respondent at 8. We are advertent to the impropriety of relying on post hoc rationalizations of agency

counsel, see *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1943); *Ashland Oil, Inc. v. FTC,* 179 U.S.App. D.C. 22, 26, 548 F.2d 977, 981 (1976), but because we determine for ourselves that as a matter of law the firing and the strike were not sufficiently related to allow the Board to include the latter in the complaint without a corresponding charge, we need not be concerned with the Board's apparent failure to give that issue consideration in its decision.

22. S. 2926, 73d Cong., 2d Sess., 78 Cong.Rec. 3444 (1934), *reprinted in* I Legislative History of the National Labor Relations Act, 1935, at 1 [hereinafter Legislative History].

23. *Id.* § 205(b) at 3445, *reprinted in* I Legislative History, *supra* note 22, at 6. A bill containing the same language was simultaneously introduced in the House. H.R. 8423, 73d Cong., 2d Sess. § 205(b) (1934), *reprinted in* I Legislative History, *supra* note 22, at 1133.

24. S. 2926, 73d Cong., 2d Sess. § 8(b) (1934), *reprinted in* I Legislative History, *supra* note 22, at 1090.

lution gave the Board authority to do so "[w]henever a complaint is made to the Board which causes the Board to believe that any person has engaged in or is engaging in any such unfair labor practice...." [25] None of these versions became law during that session.

The legislation was reintroduced in the Seventy-fourth Congress, and the Board was again to be empowered to initiate a complaint on its own.[26] The Senate Committee on Education and Labor, however, eliminated the language vesting this authority in the Board. The bill that emerged from Committee read:

> Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board ... shall have power to issue ... a complaint stating the charges in that respect.[27]

The report accompanying the Committee version did not explain the reason for the change. There was no further debate on the issue, and the bill enacted into law contained that language.[28]

Throughout consideration of the legislation in both the Seventy-third and Seventy-fourth Congresses, a number of witnesses testifying at the hearings objected to the broad scope of the Board's power under the earlier drafts of Section 10(b).[29] Criticism suggested that a Board acting as "prosecutor, grand jury, and court" [30] could not actually or in appearance be impartial.

While no member of Congress spelled out the reasons for confining the Board to

charges originated by others, the hearing testimony demonstrates that Congress was well aware of the concern that a board with too much power would not be perceived as the fairest or most effective body for settling labor disputes. Consequently, lacking any indication to the contrary, it seems safe to assume that Section 10(b) was amended with that in mind. By precluding the Board from initiating complaints without a corresponding charge from an outside party, Congress apparently intended to limit the Board's activities to those matters shown to be of concern to the very people the Act was designed to protect. At any rate, permitting the Board to circumvent this limitation by relying on the "other acts" language the Board itself prints on the charge form would ignore congressional intent as reflected in the statutory text and history, and would be tantamount to allowing the Board to enlarge its jurisdiction beyond that given it by Congress.

## IV. JUDICIAL INTERPRETATIONS

Although it is quite evident from the language and the legislative history that Section 10(b) is intended to circumscribe the Board's power, the courts have made it clear that the section is not to become a straitjacket limiting the Board to a complaint confined strictly to allegations set forth in the charge. The Supreme Court has warned that the charge is "not to be measured by the standard applicable to a pleading in a private dispute" lest the

---

**25.** S.J.Res. 143, 73d Cong., 2d Sess. § 8(b), 28 Cong.Rec. 12,025 (1934), *reprinted in* I Legislative History, *supra* note 22, at 1168.

**26.** S. 1958, 74th Cong., 1st Sess. § 10(c), 79 Cong.Rec. 2369 (1935), *reprinted in* I Legislative History, *supra* note 22, at 1301. The exact language was: "[w]henever there is a charge or the Board shall have reason to believe that any person has engaged in or is engaging in any such unfair labor practice...."

**27.** *Id., reprinted in* I Legislative History, *supra* note 22, at 2292.

**28.** Act of July 5, 1935, ch. 372, 49 Stat. 449, 453.

**29.** See, e.g., *Hearings on S. 1958 Before the Senate Comm. on Educ. & Labor,* 74th Cong., 1st Sess. 364 (1935) (statement of Raoul E. Desve-

rine), *reprinted in* II Legislative History, *supra* at 22, at 1750; *id.* at 709 (statement of William H. Davis), *reprinted in* II Legislative History, *supra* note 22, at 2095; *Hearings on S. 2926 Before the Senate Comm. on Educ. & Labor,* 73d Cong., 2d Sess. 361–362 (1934) (statement of James A. Emery), *reprinted in* I Legislative History, *supra* note 22, at 395–396; *id.* at 425–426 (statement of A.E. Crockett), *reprinted in* I Legislative History, *supra* note 22, at 459–460; *id.* at 501 (statement of Henry I. Harriman), *reprinted in* I Legislative History, *supra* note 22, at 535; *id.* at 503–504 (statement of Phillip R. Van Duyne), *reprinted in* I Legislative History, *supra* note 22, at 537–538.

**30.** *Hearings on S. 1958, supra* note 29, at 302 (statement of William Baum, Forrest Badders and Isadore Feibleman), *reprinted in* I Legislative History, *supra* note 22, at 1688.

Board become merely a "vehicle for the vindication of private rights."[31] Thus, as a means of fulfilling its duty to advance the public interest, the Board has some authority to include allegations in the complaint that are not specifically asserted in the charge. The Court has cautioned, however, that the Board does not have " 'carte blanche to expand the charge as [it may] please, or to ignore it altogether.' "[32] The question for decision then becomes how far the Board may stray from the allegations in the charge without violating Section 10(b)'s mandate that it not originate complaints on its own initiative.

In NLRB v. Fant Milling Co.,[33] the Supreme Court held that the Board is not barred from citing in a complaint " 'unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board.' "[34] The Board was therefore permitted to allege a refusal to bargain, as the involved union had originally charged, as well as the company's subsequent unilateral imposition of a general wage increase. The Court found that the refusal to bargain and the unilateral wage increase were " 'of the same class of viola-

tions;' "[35] both indicated that the company was unwilling to deal with the union as the legitimate representative of the employees. Thus, Fant Milling has been taken to establish the principle that when the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge.[36]

## V. THE INSTANT CASE

■ The Board insists that the allegedly improper dismissal and the strike were sufficiently related to come within the Fant Milling rule because they occurred one day apart, involved the same employer, and occurred at the same plant.[37] Additionally, the Board contends that during the course of a proper investigation of the discharge it was bound to learn of the circumstances surrounding the strike.[38]

It cannot be that allegations in a charge and a complaint having no more in common than that they concern the same employer and occur at the same location are sufficiently related to satisfy Section 10(b).[39] Were that the rule, the Board would be free to include in a complaint anything transpiring at an employer's place of busi-

**31.** NLRB v. Fant Milling Co., supra note 20, 360 U.S. at 307, 79 S.Ct. at 1183, 3 L.Ed.2d at 1248.

**32.** Id. at 309, 79 S.Ct. at 1184, 3 L.Ed.2d at 1249 (quoting NLRB v. Fant Milling Co., 258 F.2d 851, 856 (5th Cir.1958), rev'd, 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959)).

**33.** Supra note 20.

**34.** 360 U.S. at 309, 79 S.Ct. at 1184, 3 L.Ed.2d at 1249 (quoting National Licorice Co. v. NLRB, supra, note 20, 309 U.S. at 369, 60 S.Ct. at 579, 84 L.Ed. at 813).

**35.** Id., 360 U.S. at 307, 79 S.Ct. at 1183, 3 L.Ed.2d at 1248 (quoting National Licorice Co. v. NLRB, supra note 20, 309 U.S. at 369, 60 S.Ct. at 579, 84 L.Ed. at 813).

**36.** See Road Sprinkler Fitters Local Union v. NLRB, 252 U.S.App.D.C. 177, 182, 789 F.2d 9, 14 (1986) (allegations in complaint of diversion of bargaining unit work between August and November, 1976, "related to" charge of diversion before August, 1976); Proctor & Gamble Mfg. Co. v. NLRB, 658 F.2d 968, 984–985 (4th Cir. 1981), cert. denied, 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 144 (1982) (charge alleging that company had denied employees vacation or time off

in order to prevent them from participating in negotiations was related to complaint alleging that union president received a one-day disciplinary suspension for attending negotiations without leave); NLRB v. International Union of Operating Eng'rs, Local 925, 460 F.2d 589, 600–601 (5th Cir.1972) (charge alleging hiring hall discrimination against a certain individual sufficient to include allegations of similar discriminatory action taken against same individual after filing of original charge).

**37.** Brief for Respondent at 8.

**38.** Id.

**39.** In International Union, UMW v. NLRB, 112 U.S.App.D.C. 60, 299 F.2d 441 (1962), we held that the Board could not file a complaint alleging that a union engaged in the same type of unfair labor practices against employees of companies other than the charging company without a charge to that effect. Our concern was that "the procedural plan of charge and complaint as set forth in section 10" not be disrupted. Id. at 63, 299 F.2d at 444. See also Nazareth Regional High School v. NLRB, 549 F.2d 873, 882–883 (2d Cir.1977) (charge alleging discharge of entire unit in attempt to dissipate

ness without regard to the type of violation involved or when it occurred. Such a broad interpretation of the Board's power clearly would clash with the limiting intent pervading Section 10(b).

Here, of course, there is another link between Armendariz's dismissal and the strike—they occurred only one day apart. We cannot, however, accept the proposition that mere chronology is sufficient to put the Board beyond Section 10(b)'s restraints. That a discharge occurred one day and a strike the next day does not mean that the two events had any common features. If the strike was sparked by the discharge or was staged to protest the discharge, the necessary relationship would likely exist. Similarly, if an employee was fired for participating in a strike characterized in a filed charge as improper, a complaint based on that charge might permissibly assert that other employees were threatened with dismissal for taking part in the same strike.[40] However, if the consecutive occurrence of the two incidents was no more than happenstance, the relationship essential to incorporation of uncharged incidents into complaints is entirely lacking.

In the instant case, the connection between the discharge and the strike does not appear to extend beyond their occurrence on consecutive days. There is no indication in the record, and the Board does not argue, that the striking employees were at all concerned about the discharge, or even aware of it. Moreover, in light of the Board's omission of the discharge from the complaint, it hardly can be argued that the discharge and the threats made to the strikers were part of a continuing campaign by Galloway against the union.[41] In short, there simply is not enough connecting the discharge and the strike to justify the conclusion that the union's charge of unlawful discharge empowered the Board to file a complaint condemning the strike as an unfair labor practice.

It may be true that the Board's attorney learned of the strike during a "proper" investigation of the union's charge, but in our view this alone would not establish that the discharge and the strike were sufficiently connected.[42] Even the Board's own casehandling manual requires that if upon investigation it appears that " 'the allegations of the charge are too narrow,' an amendment should be sought, and . . . if an amendment is not filed, 'the case should be reappraised in this light, and the complaint issued, if any, should cover only matters *related* to the specifications of the charge.' "[43] Such an instruction would be wholly unnecessary if everything turned up during a "proper" investigation could legitimately be alleged in a complaint.

## VI. CONCLUSION

■ We hold that the Board may not unilaterally expand its power to issue complaints merely by relying on the "other

union's majority status not sufficiently related to allegation in complaint that single employee was not retained because of his union activities).

**40.** Compare *NLRB v. Jack LaLanne Management Corp.*, 539 F.2d 292, 294–295 (2d Cir.1976) (charge of retaliatory action taken against one employee for supporting union representation sufficient to support complaint alleging similar action taken against other employees after they testified at Board hearing); *NLRB v. Inland Empire Meat Co.*, 611 F.2d 1235, 1237–1238 (9th Cir.1979) (charge alleging unlawful dismissal of one employee in November sufficient to support complaint alleging the discharge and additional unlawful acts against other employees in November and December intended to discourage union activity).

**41.** See *NLRB v. Central Power & Light Co.*, 425 F.2d 1318, 1320–1321 (5th Cir.1970) ("sufficient relation [between charge and complaint] . . .

generally . . . found between acts that are part of the same course of conduct, such as a single campaign against a union"); *NLRB v. Braswell Motor Freight Lines*, 486 F.2d 743, 746 (7th Cir. 1973) (company's actions all "part of an overall plan to resist organization"). But see *NLRB v. Rex Disposables*, 494 F.2d 588, 589–591 (5th Cir. 1974) (allowing complaint alleging threats, layoffs, coercive interrogations, and surveillance of union meetings to stand despite dismissal of charges filed by union alleging specific layoffs of five employees because of union activity).

**42.** But see *NLRB v. Rex Disposables, supra* note 41, 494 F.2d at 591; *NLRB v. Complas Indus.*, 714 F.2d 729, 733 (7th Cir.1983) (both relying on presumption that events alleged in complaint would have been discovered during investigation of charge).

**43.** *G.W. Galloway Co., supra* note 8, 281 N.L.R. B. No. 38, at 3 n. 2 (quoting N.L.R.B. Casehandling Manual § 10064.5) (emphasis in original).

acts" language contained in the preprinted charge form. There must be a significant factual relationship between the allegations in the charge and those in the complaint. We agree that "[i]f this 'boiler-plate' may be read to justify the Board's complaint upon activities not sufficiently related to those specified in the complaint to be covered by operation of law, it would become so vast a catch-all that it would drain the meaning from Section 10(b)." [44] The Board has failed to establish the necessary connection between the incident alleged in the charge and that averred in the complaint, and the Board's order must be set aside.

SO ORDERED.

---

44. *Gulf States Mfrs., Inc. v. NLRB*, 598 F.2d 896, 906 (5th Cir.1979) (concurring and dissenting opinion).