8 F.3d 71
 144 L.R.R.M. (BNA) 2743, 303 U.S.App.D.C. 418
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
LAKESIDE COMMUNITY HOSPITAL, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and consolidated case nos. 92-1375 and 93-1200.
 No. 92-1186.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 8, 1993.
Rehearing and Suggestion for Rehearing En Banc
Denied Dec. 23, 1993.
 
 Before: MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 Upon consideration of Lakeside Community Hospital's petitions for review of three orders of the National Labor Relations Board, the court finds the claims of error to be without merit for the reasons stated in the accompanying Memorandum opinion. It is therefore
 
 
 2
 ORDERED and ADJUDGED that the petitions for review are denied and the Board's cross-petition for enforcement is granted.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 These petitions arise from the disputed results of a union representation election held in May 1990. In each of the three consolidated cases here, the National Labor Relations Board ("Board") granted summary judgment against employer Lakeside Community Hospital ("Lakeside" or "petitioner") on allegations that Lakeside had unlawfully refused to bargain with the Hospital and Health Care Workers Union, Local 250, Service Employees International Union, AFL-CIO ("Union").
 
 
 5
 Petitioner raises the following claims: (1) the complaint in Case 20-CA-23437 is invalid because it is founded on alleged unlawful conduct occurring after the filing of the unfair labor practice charge; (2) the Union is not a labor organization within the meaning of the National Labor Relations Act ("Act"), because at one time some members could not vote for all positions on the Union's executive board; (3) the Board erred in sustaining challenges to the ballots cast by Jean Forsythe, a licensed vocational nurse, and Ruth Lincoln, a per diem registered nurse, in the professional unit election; and (4) the Board erred in failing to determine the professional status of four employee classifications prior to issuing bargaining orders.
 
 
 6
 On each of the foregoing claims, the Board's findings are supported by substantial evidence and are not otherwise inconsistent with law. We therefore deny Lakeside's petitions for review primarily for the reasons stated in the Board's orders. See Lakeside Community Hosp., Inc., 306 N.L.R.B. No. 99 (Feb. 28, 1992), reprinted in Appendix Submitted by Petitioner ("App.") 100; Lakeside Community Hosp., Inc., 307 N.L.R.B. No. 189 (July 10, 1992), reprinted in App. 108; Lakeside Community Hosp., Inc., 310 N.L.R.B. No. 86 (Mar. 4, 1993), reprinted in App. 127. Two of Lakeside's claims warrant brief comment, however. Our opinion on these two claims is set forth below.
 
 A. Validity of the Complaint
 
 7
 On June 12, 1990, the Union filed an unfair labor practice charge alleging violations of Sections 8(a)(1), 8(a)(5) and 8(d) of the Act, 29 U.S.C. § 158 (1988). The complaint that issued on June 28, 1991, focused on unlawful conduct commencing in July 1990. Lakeside argues that the Union's charge was purely anticipatory and that the Board exceeded its authority in issuing a complaint based on post-charge unlawful conduct.
 
 
 8
 NLRB v. Fant Milling Co., 360 U.S. 301 (1959), governs the disposition of petitioner's claim. In Fant Milling, the Supreme Court considered the extent to which the Board may take cognizance of events occurring subsequent to the filing of the charge upon which the complaint is based. The Court held that the Board was not precluded from addressing unfair labor practices " 'which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board.' " Id. at 307 (quoting National Licorice Co. v. NLRB, 309 U.S. 350, 369 (1940)). We have interpreted Fant Milling to permit the Board to address "matters sharing a significant factual affiliation with the activity alleged in the charge." G.W. Galloway Co. v. NLRB, 856 F.2d 275, 280 (D.C.Cir.1988).
 
 
 9
 We have no trouble concluding in this instance that the nexus between the unlawful conduct alleged in the charge and that alleged in the complaint satisfies Fant Milling. In June 1990, the Union charged Lakeside with implementing unilateral changes in the terms and conditions of employment without negotiating with the Union. Charge Against Employer, reprinted in App. 67. Following an investigation, the Board issued a complaint alleging that in July, August and November 1990, Lakeside had granted bonuses to unit employees, changed base rates of pay and altered its health and life insurance plans--all unilateral changes in the terms and conditions of employment. Complaint and Notice of Hearing at 3, reprinted in App. 71. Thus, the charge and complaint addressed conduct that was identical in nature, closely related in time, and grounded in the same provisions of the Act. Fant Milling requires no tighter nexus. See Road Sprinkler Fitters Local Union v. NLRB, 789 F.2d 9, 14 (D.C.Cir.1986) (allegations in complaint of diversion of bargaining unit work between August and November "related to" charge alleging such diversion before August of same year); compare G.W. Galloway Co., 856 F.2d at 280-81 (complaint alleging wrongful threats to picketing strikers exceeded scope of charge alleging discriminatory termination of individual employee).
 
 B. Challenge to the Ballot of Jean Forsythe
 
 10
 Prior to the professional unit election, petitioner and the Union entered into stipulations concerning the "professional" status of most employee classifications. Pursuant to one stipulation, which was accepted by the Regional Director, licensed vocational nurses ("LVNs") specifically were excluded from both the proposed professional and non-professional units. (This exclusion was hardly surprising, because there was already an existing unit of LVNs at Lakeside.) Accordingly, during the subsequent election, the Board Agent challenged the ballot of Jean Forsythe, a LVN who sought to vote in the professional unit.
 
 
 11
 It is uncontroverted that on March 17, 1990, the election eligibility date, Forsythe was employed as a LVN. Forsythe had taken and failed the registered nurse ("RN") licensing exam in July 1989, and then retaken the exam in February 1990; she did not learn until April 1990 that she had passed. See Hearing Officer's Report and Recommendations on Objection and Challenged Ballots at 3-4, reprinted in App. 56-57. Under California law, a person who has taken the RN exam may work as an "interim permittee" until exam results are announced. If she fails the exam, as did Forsythe, she loses her interim permit and cannot obtain another. See id. at 3, reprinted in App. 56. Based on these facts, petitioner now argues that the Board impermissibly relied on state law in deeming Forsythe to be a LVN and that she should have been considered a professional "graduate nurse" within the meaning of Board precedent.
 
 
 12
 We reject Lakeside's argument that the Board may not look to state law in determining an employee's professional status. To the contrary, employee classifications frequently are determined by reference to state law. Registered nurses, to name but one example, earn that title by passing state licensing examinations. Once they have done so, they are deemed "professionals" unless they are not working in the profession. It may well be that educational and other requirements for licensing vary from state to state, yet we are not concerned that such discrepancies will undermine any interest in the development of a uniform national labor policy, as petitioner argues.
 
 
 13
 The cases cited by petitioner do not support the proposition that the Board must determine the status of a particular employee solely under federal law. Mercy Hospitals of Sacramento, Inc., 217 N.L.R.B. 765 (1975), merely held that nurses holding interim permits under California law could be included in a professional unit. It is undisputed here, however, that Forsythe had lost her interim permit after learning that she failed the RN exam. California is not required to presume that Forsythe would pass the exam on her next attempt or indeed that she would ever pass.
 
 
 14
 Moreover, the argument that Forsythe should have been permitted to vote in the professional election is particularly meritless in view of the fact that LVNs employed by petitioner already were represented by a certified bargaining unit and, therefore, by stipulation of petitioner and the Union, were excluded from participation in the instant election entirely. Thus, as a LVN, Forsythe already enjoyed the benefits of representation by a certified labor organization and the Board properly sustained the challenge to her vote in the professional election.
 
 
 15
 Our resolution of the challenge to Forsythe's vote obviates the need to address petitioner's claim concerning Ruth Lincoln, because Lincoln's vote can no longer affect the outcome of the election. Finally, we note that petitioner can negotiate with the Union to determine the professional status of any remaining employee classifications that are in dispute. If the parties are unable to reach agreement, they may seek recourse through the Board's unit clarification procedures.