Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Decided April 6, 2004

No. 02-1164
& No. 02-1203

PRECISION CONCRETE,
PETITIONER/CROSS–RESPONDENT

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT/CROSS–PETITIONER

SOUTHWEST REGIONAL COUNCIL OF CARPENTERS *F/K/A*
SOUTHERN CALIFORNIA–NEVADA REGIONAL COUNCIL OF
CARPENTERS, AND LABORERS LOCAL UNION NO. 872,
INTERVENORS

————

On Petitioner's Application for Attorneys' Fees

————

Before: GINSBURG, *Chief Judge*, and SENTELLE and
HENDERSON, *Circuit Judges*.

Opinion for the Court filed *Per Curiam*.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Per Curiam*: We decided the merits of this controversy in *Precision Concrete v. NLRB*, 334 F.3d 88 (D.C. Cir. 2003). We now consider petitioner's application for attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Because we find that as to a substantial portion of the litigation the General Counsel was not substantially justified in issuing and prosecuting a complaint and the Board was not substantially justified in defending its decision through litigation in this court, we award a portion of the fees sought in the application for the reasons more fully set forth below.

## I. BACKGROUND

The factual background of the controversy is set forth in some detail in *Precision Concrete v. NLRB*, 334 F.3d at 89–90, but we need to make brief reference to pertinent portions of the background facts in order to analyze the application before us. Briefly put, after a contentious organization drive, approximately 100 of Precision's work force undertook a strike called by the Building Trades Organizing Project ("Union"). The strike was not successful. The company hired replacement workers and refused to reinstate the strikers. The Union filed a series of unfair labor practice charges. The General Counsel of the Board filed a complaint which in addition to the charges filed by the Union alleged that the company had committed an unfair labor practice in an incident involving an employee wearing a union t-shirt (the "Pulido–Mendez t-shirt incident"). This was not included in any formal unfair labor charges filed against the company. The Administrative Law Judge ("ALJ") hearing the complaint held that the Pulido–Mendez t-shirt incident was an unfair labor practice, that it was "closely related" to previously filed formal charges, and that the incident was a cause of the strike. Because "an unfair labor practice striker who unconditionally offers to return to work is entitled to reinstatement," *Gibson Greetings, Inc. v. NLRB*, 53 F.3d 385, 389 (D.C. Cir. 1995), this finding was critical to the claimed right of the strikers to a reinstatement remedy, which they could not obtain if the strike were economic, and not in response to

an unfair labor practice or practices. On appeal, the Board upheld the decision of the ALJ. As neither the Board nor the ALJ found any other unfair labor practice to have been a cause of the strike, the Board's major remedy of reinstatement depended entirely on the Board's jurisdiction over the "t-shirt" claim. Precision appealed to this court arguing that the t-shirt incident was not properly before the Board. We agreed, holding that the Board did not have jurisdiction to adjudicate the t-shirt incident and therefore did not have jurisdiction to enter the reinstatement relief against the petitioning employer. *See, e.g., Drug Plastics & Glass Co., Inc. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) ("Where the Board is unable to connect the allegations in its complaint with the charge allegation, we are unable to find that the Board has jurisdiction over the unrelated complaint allegations."). Based on our decision in its favor in Precision, the employer now petitions this court for reimbursement of its attorneys' fees incurred in the matter in the amount of $143,430.50 in attorneys' fees and $7,994.05 in expenses.

Under the EAJA,

> a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Precision argues that the Board was not "substantially justified" in litigating this matter and that it is therefore entitled to reimbursement of the fees and expenses prayed for. In support of this argument, Precision asserts that "the Board's insistence that it had jurisdiction over the Mendez t-shirt incident is the primary reason Precision continued to pursue this case," and that "[i]t would not have been necessary for Precision to incur any fees beyond the hearing before the Administrative Law Judge absent this

jurisdictional error by the Board." Precision Concrete's Reply in Support of its Application at 4–5.

The NLRB disagrees, arguing that no fees should be reimbursed for litigating the Pulido–Mendez t-shirt incident because the Board was substantially justified in bringing that action. The NLRB also argues that no fees should be awarded for time spent on four unfair labor practices found by the ALJ/Board. The Board also argues that Precision's counsel expended uncompensible hours on other arguments in support of its petition for review of the Board's holding on the t-shirt incident and that petitioners should not be awarded fees for the time spent on those arguments. Because we agree with Precision that the NLRB acted without substantial justification, we hold that it is entitled to fee reimbursement under the Equal Access to Justice Act, although we will order some reduction to the amount prayed.

## II. ANALYSIS

Subject to other statutory criteria which are not in dispute in this matter, the EAJA provides that a "prevailing party" in actions "including proceedings for judicial review of agency action, brought by or against the United States" are entitled along with the customary costs of litigation to a recovery of fees and other expenses incurred. 28 U.S.C. § 2412(d)(1)(A). As Precision is obviously the prevailing party, and as there is no dispute as to any other statutory criterion, the governing issue in this case is whether the position of the NLRB was substantially justified. We hold that beginning with the review of the ALJ's decision by the Board, it was not.[1]

As we made clear in the merits decision of this case, the t-shirt incident which was the only foundation for the principal remedy ordered by the Board and brought to us for review first arose in an amended complaint more than six months after the alleged incident. Section 10(b) of the National Labor Relations Act requires that "no *complaint* shall issue

---

[1] EAJA recovery of attorneys' fees and costs is available in adversary administrative adjudications as well as litigation in the article III courts. *See* 5 U.S.C. § 504.

based upon any unfair labor practice occurring more than six months prior to the filing of the *charge* with the Board." 29 U.S.C. § 160(B) (emphasis added). While it is well established that a complaint need not be filed within six months of the incident and may be amended more than six months after the incident, *see NLRB v. Dinion Coil Co.*, 201 F.2d 484, 491 (2d Cir. 1952), the statute does require "that the complaint be based upon an unfair labor practice charge filed within six months of the allegedly unlawful conduct." *Precision*, 334 F.3d at 91. Not only was there no timely charge filed as to the t-shirt incident, no charge was ever filed alleging that incident. The t-shirt incident appeared for the first time in the complaint, an appearance not timely and not valid.

We have long held that "when the Board ventures outside the strict confines of the" charges before it, "it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge." *Id.*, quoting *G.W. Galloway Co. v. NLRB*, 856 F.3d 275, 280 (D.C. Cir. 1988). The Supreme Court long ago dealt with the standard of relatedness governing the Board's ability to pass on allegations of unfair labor practices raised for the first time in a complaint but not part of the timely filed charge underlying the complaint. *NLRB v. Fant Milling Co.*, 360 U.S. 301 (1959). In *Fant Milling*, the Supreme Court held that the Board may prosecute unfair labor practices not specifically alleged in a charge where such practices are " 'related to those alleged in the charge and . . . grow out of them while the proceeding is pending before the Board.' " *Precision*, 334 F.3d at 92, quoting *Fant Milling*, 360 U.S. at 309. In *Precision*, we held that the only link between the t-shirt incident and the other charged unfair labor practices was that "all occurred during the course of the Union's organizing drive in 1988." 334 F.3d at 93. Since that connection was obviously insufficient under well-established precedent, the Board had no jurisdiction to pass on the alleged incident as an unfair labor practice and hence no jurisdiction to enter the reinstatement order. Therefore, Precision was plainly entitled to the relief sought in the merits action. *Id.*

The principal question before us today is whether the Board was substantially justified in its invalid assertion of jurisdiction. The best evidence on that subject is the justification which the Board offered in the merits argument. Without rehashing that entire case, after a full review of the Board's arguments and the record we held that "[t]he only link we can see is that the alleged incidents all occurred during the course of the union's organizing drive in 1998." *Precision*, 334 F.3d at 93. It is well established that "coincidence of the two separate violations during the same organizing campaign" does not meet the test of *Fant Milling*. *Ross Stores, Inc. v. NLRB*, 235 F.3d 669, 674 (D.C. Cir. 2001).

*Fant Milling* made it clear in 1959 that the Board cannot pass on allegations of unfair labor practices outside those alleged in a timely filed charge. While this requirement has been relaxed to the extent of permitting the Board to "include allegations in the complaint that are not *specifically* asserted in the charge," *Galloway*, 856 F.2d at 280 (emphasis added), it has not been abolished. The Board does not have "*carte blanche* to expand the charge as [it may] please, or to ignore it all together." *Id.* When the Board goes beyond this clear jurisdiction to proceed on the complaint rising out of the timely filed charge, it can act only where there is a " 'significant factual affiliation' between the charged conduct and the allegations in the complaint." *Precision* 334 F.3d at 92, quoting *Galloway*, 856 F.2d at 280. In the face of an unbroken line in authority to that effect, *see Drug Plastics*, 30 F.3d at 172–73; *Ross Stores, Inc.*, 235 F.3d at 674; and *Galloway*, 856 F.2d at 280, the Board acted where it clearly did not have jurisdiction. As we have stated before in an EAJA case against another agency, "while a string of losses is not determinative, it can be indicative that an agency's position lacks substantial justification." *Contractor's Sand & Gravel, Inc. v. FMSHRC*, 199 F.3d 1335, 1341 (D.C. Cir. 2000) (internal quotations and citations omitted). Absent some compelling argument for asserting jurisdiction where it has long been held to have none, the Board cannot substantially justify its action. It has offered no such compelling justification here. We therefore conclude that *Precision* is

entitled to an award of attorneys fees and expenses under the EAJA.

## III.  AMOUNT

To say that Precision is entitled to an award of attorneys' fees is not to say that Precision is entitled to an award in the amount prayed.  "Even if an applicant meets the threshold EAJA requirements, [it] can collect only a 'reasonable' fee." *Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C. Cir. 1993) (quoting *Commissioner of Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 161 (1990)).  Precision seeks compensation for 1,151.4 hours of attorney time at the statutory rate of $125 per hour (*see* 28 U.S.C. § 2412(d)(2)(A)) for a total of $143,925.00.[2]  While the rate is fixed by statute, the NLRB contends, and we agree, that the hours asserted are excessive.  We therefore will make several deductions from the amount prayed.

First, as to the time spent in preparation and argument before the ALJ, the issues at that point were not limited to the t-shirt incident and the affidavit filed by counsel for Precision does not very clearly delineate time spent on the specific issues.  While the General Counsel did not have substantial justification for the inclusion of the t-shirt incident, as to the other issues, regardless of whether Precision won or lost, there is no claim that they were filed without substantial justification.  Precision's counsel has given us little help in allocating the hours before the ALJ between the t-shirt incident and other parts of the case.  Presumably at that early stage much of the background work would have been the same with or without the invalid issue.  We therefore deduct 200 of the 341.3 hours prayed for preparation and argument before the ALJ.

The next block of time is attributed to preparation and argument before the Board as well as contemporaneous set-

---

[2] The amount sought by Precision in its Application for Attorneys' Fees is slightly different, $143,430.50.  Considering the number of hours sought (1,151.4), we calculate this amount to be underestimated by $495.00.

tlement discussions. As the Board points out to us, other issues remained in the case at that time–issues as to which the substantial justification of the Board's position is not at issue. We therefore reduce by half the 280.6 hours prayed and deduct from the available relief the attorneys' fees for 140.3 hours.

As to the next phase, that is time spent on the brief and oral argument for the petition for review in this court, the Board asserts that other issues remain, specifically procedural and due process claims. We cannot agree with the Board that the presence of the other issues should occasion a pro rata reduction in the fees sought for appearance before this court. Precision credibly argues that it would not have pursued the petition for review in the absence of the clearly erroneous jurisdictional argument upon which it did prevail. It is not the case that the time spent on Issue A inevitably equals the time spent on Issue B or that an appeal or petition raising three issues would have been brought on the two weakest of them had the first and strongest argument not been there. Nonetheless, we agree with the Board that the total of 500.5[3] hours which Precision claimed its counsel expended on the appellate brief and argument is "unreasonable and excessive and should be reduced." As the Supreme Court has long recognized, "cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley v. Eckerhart*, 461 U.S. 424, 443 (1983). Therefore, we must exclude from fee awards "hours that are excessive, redundant, or otherwise unnecessary." *Id.* The attorneys representing Precision in the court proceedings had litigated this case in its earlier stages and were familiar with the facts and law involved. The case was not one of great complexity or

---

[3] The NLRB calculates the number of hours claimed for this phase as 578, but we have recalculated the prayer of Precision and believe the figure 500.5 more fairly represents the portion attributable to the petition for review. The Board's calculation and ours have been made quite difficult by the failure of Precision anywhere to total its hours claimed, let alone subtotal the same into workable units. Therefore, both the Board and the court have done the best we can with the raw data supplied by Precision.

based on an unusually voluminous record. We see nothing in this case that warranted the expenditure of over twelve and a half weeks at forty hours per week of professional time. Obedient to *Hensley v. Eckerhart*, that we should exclude "hours that were not 'reasonably expended'" and consider the possibility of overstaffing, *id.*, we have reviewed the nature of this litigation and the quality of the representation. In light of counsel's familiarity with the case, the lack of complexity and the product presented to this court, we order reduction of the time spent in litigation before this court by fifty percent, or rounding to the nearest tenth, 250.2 hours.

We therefore reduce the total compensable hours by 590.6 hours, to 560.8 hours and award counsel fees in the total amount of $70,100.00.

## IV. EXPENSES

Precision seeks expenses in the amount of $7,994.05. Application for Attorneys' Fees at 31–35. The NLRB notes that Precision's request includes expenses for travel, courier expenses, overnight delivery, facsimile transmissions, telephone costs, and taxis, which the NLRB argues are not reimbursable under the EAJA. *See Epilepsy Found. of Northeast Ohio v. NLRB*, 2002 WL 1331873 at *2 (D.C. Cir. 2002) (unpublished opinion); *Mass. Fair Share v. Law Enforcement Admin.*, 776 F.2d 1066, 1069–70 (D.C. Cir. 1985).

Precision replies the NLRB is correct that these expenses are not recoverable under this court's prior decisions, but argues that "in this era where facsimile and FedEx are the standard means of delivery in most law offices, these expenses are in line with the statutory objectives."

Be that as it may, the NLRB has correctly listed Precision's requested expenses that are not reimbursable under the EAJA. Opposition of NLRB to Precision Concrete's Application, Exhibit B at 3–4. It would appear that, pursuant to the EAJA and this court's prior decisions, the NLRB's calculation that $2,462.83 in expenses should be deducted is correct.

We therefore award expenses in the amount of $5,531.22.

## V. Conclusion

For the reasons set forth above, we hold that petitioners are entitled to attorneys' fees in the amount of $70,100.00 and expenses in the amount of $5,531.22.

*So ordered.*