ROSS STORES, INC.,Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 99–1453.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 12, 2000.

Decided Jan. 12, 2001.

Joseph G. Ferguson argued the cause for the petitioner. James P. Valentine and Elizabeth C. Leo were on brief.

Jill A. Griffin, Attorney, National Labor Relations Board, argued the cause for the respondent. Leonard R. Page, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and David Habenstreit, Attorney, National Labor Relations Board, were on brief.

James B. Coppess and Jonathan P. Hiatt were on brief for amicus curiae American Federation of Labor and Congress of Industrial Organizations

Before: HENDERSON, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the court by Circuit Judge HENDERSON.

Concurring opinion filed by Circuit Judge HENDERSON.

Concurring opinion filed by Circuit Judge RANDOLPH.

Opinion concurring in part and dissenting in part filed by Circuit Judge GARLAND.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Ross Stores, Inc. (Ross) petitions for review of a decision and order of the National Labor Relations Board (Board, NLRB) finding that Ross violated section 8(a)(1) and (3) of the National Labor Relations Act (Act) when (1) it discharged an employee on account of his union support and (2) its supervisor informed the same employee that no soliciting was allowed on company premises. We uphold the Board's finding as to the discharge because it is supported by substantial evidence and set aside its finding regarding the solicitation admonition because it is time-barred under section 10(b) of the Act, 29 U.S.C. § 160(b), which requires that an unfair labor practice allegation be made within 6 months of its occurrence.

**I.**

In May 1993 a group of employees at Ross's non-union distribution center in Carlisle, Pennsylvania began organizing efforts on behalf of the International Ladies Garment Workers Union, Local 170, AFL–CIO (Union). On June 1, 1993 the Union wrote to David Morrison, a Ross vice president in charge of the Carlisle facility, formally advising him of the organization activity and identifying 15 involved employees, including David Jumper and Jumper's fiancee, Kathy Curtis. Three incidents during the organizing campaign were alleged below to constitute unfair labor practices by Ross.

First, at an assembly in late May 1993 Morrison told the gathered employees "they did not need a union" and " 'he would do anything in his power to keep the union out of the building.' " App. 670.

Second, in late May or early June 1993 supervisor Michael Simondi observed Jumper and a coworker exit the men's restroom together and, when he entered the restroom, discovered they had posted union literature inside. He removed the postings and later admonished each of

them separately that " 'there was no solicitation on these premises.' " App. 670.

The third incident was Jumper's discharge. On August 12, 1993 Jumper, who had a history of tardiness and absenteeism, asked his supervisor if he could change his upcoming August 16 personal birthday vacation day to August 12 so that he could accompany Curtis to the hospital to be treated for an injury she had suffered the previous day. Jumper's supervisor responded that he lacked authority to approve the switch and referred Jumper up the chain of command. Two higherups similarly disclaimed approval authority and Jumper was finally referred to human resource specialist Paula Hoch. Jumper met with Hoch at about 8:15 the same morning and explained his situation. She told him the vacation day had to be scheduled in advance and, when he said he was leaving anyway, warned him he would then incur additional absentee "points." Jumper then left. When he arrived at work the next day, August 13, he was greeted by Morrison and Hoch. Morrison told Jumper he was being discharged in accord with Ross's absence policy because he had exceeded the permissible number of absentee points, which he had.

The day he was fired, August 13, 1993, Jumper filed a handwritten charge with the NLRB expressing his belief that he had been "terminated from Ross Inc. due to union involvement." App. 1. On March 4, 1994 Jumper filed a second, typewritten charge alleging three separate unfair labor practices: Simondi's no-solicitation admonition, Morrison's comments to the employees and the discharge. On March 18, 1994 the Board's General Counsel issued a complaint alleging the same three unfair labor practices.

After a two-day hearing in February 1994 the Administrative Law Judge (ALJ) issued a decision dated April 5, 1995 finding each of the three charges proven. In the decision the ALJ denied Ross's motion to dismiss the first two charges as time-barred under section 10(b) of the Act.

In a decision and order issued September 30, 1999 a divided Board affirmed the ALJ's denial of Ross's motion to dismiss and the findings that Simondi's no-solicitation admonition and Jumper's discharge violated, respectively, section 8(a)(1) and section 8(a)(3) of the Act.[1] The Board rejected the ALJ's finding that Morrison's speech violated section 8(a)(1) because the majority found it not threatening.[2]

Ross petitioned for review and the Board cross-applied for enforcement.

## II.

We address Ross's challenge to each of the two unfair labor practice findings separately.

### A.

First we consider the Board's finding that Simondi violated section 8(a)(1) of the Act when he instructed Jumper and a coworker that "no solicitation" was allowed on Ross's premises. Section 10(b) of the Act provides in relevant part:

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have

---

1. These two provisions make it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title," 29 U.S.C. § 158(a)(1), and "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization," *id.* § 158(a)(3).

2. Board Members Brame and Hurtgen dissented from the finding that the first two charges were not time-barred and Member Hurtgen further dissented from the majority holding that Jumper's discharge was in violation of the Act. Board Members Fox and Liebman dissented from the finding that Morrison's comments did not constitute an unfair labor practice.

power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board* and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge.

29 U.S.C. § 160(b) (emphasis added). No one disputes that the no-solicitation allegation in the complaint is time-barred under a literal application of this provision because Jumper's February 23, 1994 typewritten charge containing the allegation was filed more than six months after Simondi's admonition which took place in late May 1993. The Board concluded, however, that the incident was timely charged because it was closely related to Jumper's termination which was timely charged on August 13, 1993. We disagree.

■■■ The NLRB has long construed section 10(b), with judicial approval, to permit prosecution of an alleged violation that was not timely charged if it is "closely related" to the allegations in a timely filed charge. To determine whether timely and untimely allegations are "closely related," the Board has developed a tripartite test:

First, the Board will look at whether the otherwise untimely allegations involve the same legal theory as the allegations in the pending timely charge. Second, the Board will look at whether the otherwise untimely allegations arise from the same factual circumstances or sequence of events as the pending timely charge. Finally, the Board may look at whether a respondent would raise similar defenses to both allegations.

*Nickles Bakery of Indiana, Inc.*, 296 N.L.R.B. 927, 928, 1989 WL 224354 (1989) (citing *Redd–I, Inc.*, 290 N.L.R.B. 1115, 1116, 1988 WL 214320 (1988)). Here the Board found the separate allegations are closely related based on (1) the "common legal theory" of "animus in opposition to the Union's organizational campaign"; (2) the "similar factual circumstances" that each incident "arose in the context of a single organizational campaign and was part of the Respondent's overall efforts to resist that campaign"; and (3) the "common defenses" that Ross "did not seek to unlawfully restrict Jumper's union activity by the manager's placing restrictions on Jumper's solicitation activities or by Jumper's subsequent discharge." NLRB Dec. at 2–3. We hold that the Board's finding of a factual nexus under the second prong of the test is inadequate as we held regarding similar findings in both *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017 (D.C.Cir.1995), and *G.W. Galloway Co. v. NLRB*, 856 F.2d 275 (D.C.Cir.1988).[3]

In *Drug Plastics* the Board's General Counsel filed a complaint alleging a timely charged retaliatory discharge and a series of uncharged anti-union acts in the months surrounding the discharge. The Board found the uncharged complaint allegations closely related to the charged termination allegation "because it found that the allegations 'arose out of the Respondent's overall plan to resist the Union ...; that all the allegations occurred after the respondent's acknowledged awareness of the organizing effort ...; that several of the allegations involved statements to [the discharged employee] ...; and that the 8(a)(1) allegations generally occurred during the same time period as the 8(a)(3)

---

**3.** Having concluded the Board incorrectly found the factual prong of the "closely related" test was satisfied, we do not address the Board's findings on the test's two other prongs.

allegation.'" *Drug Plastics,* 44 F.3d at 1021. The *Drug Plastics* court concluded the Board's reasoning conflicted with the Board's own decision in *Nippondenso Mfg. U.S.A.,* 299 N.L.R.B. 545, 1990 WL 133492 (1990), which held that allegations were not "closely related" simply because they involved "discriminatory acts against employees 'during, and in order to quell, a union campaign'" and "arise from the same circumstances and sequence of events." *Nippondenso,* 299 N.L.R.B. at 545. The court further concluded the Board's determination that the uncharged allegations were timely could not stand because the Board had not overruled *Nippondenso* or explained its deviation from *Nippondenso*'s holding. Seeking to avoid a similar fate here, the Board below "decided to overrule *Nippondenso* to the extent that it conflicts with *Nickles Bakery* and other precedent ... consistently holding that the requisite factual relationship under the 'closely related' test may be based on acts that arise out of the same anti-union campaign." NLRB Dec. at 2. To no avail.

The Board's contention that the factual relationship prong can be satisfied *solely* on the basis that the separate acts arise out of the same anti-union campaign here is a deviation from the very precedent it cites. As we stated in *Drug Plastics, Nickles* simply "does not support the Board's conclusion." 44 F.3d at 1021. The Board in *Nickles* did not even address whether the circumstances there supported a closely related finding but merely "overruled those cases holding or implying that the catchall 'other acts' language preprinted on the charge form provides a

sufficient basis, on its own, to support any and all 8(a)(1) complaint allegations" and remanded to the Regional Director to apply the closely related test. *Nickles,* 296 N.L.R.B. at 929.[4] In each of the other cited cases the Board required both that the separate incidents be part of the same union organizing campaign *and* that they be part of an overall employer plan to undermine the union activity. *See Pioneer Hotel & Gambling Hall,* 324 N.L.R.B. 918, 918 n. 1, 1997 WL 693030 (1997); *Recycle America,* 308 N.L.R.B. 50, 50 n. 2, 1992 WL 186632 (1992); *Pincus Elevator & Elec. Co.,* 308 N.L.R.B. 684, 684 n. 2, 690, 1992 WL 221846 (1992), *enforced mem.,* 998 F.2d 1004 (3d Cir.1993); *Outboard Marine Corp.,* 307 N.L.R.B. 1333, 1334, 1992 WL 180685 (1992), *enforced,* 9 F.3d 113 (7th Cir.1993); *Well–Bred Loaf, Inc.,* 303 N.L.R.B. 1016, 1016 n. 1, 1991 WL 151110 (1991); *Southwest Distributing Co.,* 301 N.L.R.B. 954, 955, 1991 WL 46163 (1991); *Harmony Corp.,* 301 N.L.R.B. 578, 578–579, 1991 WL 22032 (1991); *Beretta U.S.A. Corp.,* 298 N.L.R.B. 232 n. 1, 1990 WL 122367 (1990), *enforced,* 943 F.2d 49 (4th Cir.1991); *Van Dyne Crotty Co.,* 297 N.L.R.B. 899, 900, 1990 WL 122304 (1990).[5] Although the Board's decision here recites the separate incidents were "part of the Respondent's overall efforts to resist that campaign," NLRB Dec. at 2–3, the finding is unsupported in the record except by the happenstance that the unrelated two violations occurred during a single campaign and involved the same pro-union employee. There is no evidence to otherwise connect Jumper's discharge to Simondi's apparently isolated and unautho-

4. In its original context, the quoted language simply referenced a footnote in *Galloway* which in turn "cited cases from other courts of appeals referring to the finding of a sufficient relation between the charge and complaint in circumstances involving 'acts that are part of the same course of conduct, such as a single campaign against a union,' *NLRB v. Central Power & Light Co.,* 425 F.2d 1318, 1321 (5th Cir.1970), and acts that are all 'part of an overall plan to resist organization.' *NLRB v. Braswell Motor Freight Lines,* 486

F.2d 743, 746 (7th Cir.1973)." *Nickles,* 296 N.L.R.B. at 929 n. 7 (citing *Galloway,* 856 F.2d at 281 n. 41).

5. While we point out that the decision below deviated from the line of cases finding it sufficient if two incidents both occur during the same campaign and are part of an overall union plan, we do not decide whether or not those cases were correctly decided.

rized invocation of an overbroad solicitation policy.[6] Nor is there any evidence that Simondi was involved in Jumper's discharge. *Cf. MECO Corp. v. NLRB,* 986 F.2d 1434, 1437 (D.C.Cir.1993) (anti-union comments of supervisor did not establish animus of discharge of union adherent where there was "no showing that [supervisor] played any role in [the] discharge"); *Hudson, Inc.,* 275 N.L.R.B. 874, 874–75, 1985 WL 45624 (1985) (finding supervisor's anti-union remarks did not "establish the requisite element of anti-union animus" where he "played no part in [employer's] decision to lay off the employees").[7]

Not only is the Board's decision unsupported by its own case law, it also flouts ours. In *Drug Plastics* the court overturned the Board's "closely related" finding not only because it was inconsistent with *Nippondenso* but also because the court's opinion in *Galloway* "dictate[d] its reversal." *Drug Plastics,* 44 F.3d at 1021. After examining the language, legislative history and judicial construction of section 10(b) the *Galloway* court rejected the Board's position that an unlawful dismissal and threats to strikers were sufficiently related "because they occurred one day apart, involved the same employer, and occurred at the same plant." 856 F.2d at 280. The court in *Galloway* explained:

> It cannot be that allegations in a charge and a complaint having no more in common than that they concern the same employer and occur at the same location are sufficiently related to satisfy Section 10(b). Were that the rule, the Board would be free to include in a complaint anything transpiring at an employer's place of business without regard to the

type of violation involved or when it occurred. Such a broad interpretation of the Board's power clearly would clash with the limiting intent pervading Section 10(b).

*Id.* at 280–81. Nor, the court concluded, was the Board's case helped by the additional "link" that the alleged incidents "occurred only one day apart":

> We cannot ... accept the proposition that mere chronology is sufficient to put the Board beyond Section 10(b)'s restraints. That a discharge occurred one day and a strike the next day does not mean that the two events had any common features. If the strike was sparked by the discharge or was staged to protest the discharge, the necessary relationship would likely exist. Similarly, if an employee was fired for participating in a strike characterized in a filed charge as improper, a complaint based on that charge might permissibly assert that other employees were threatened with dismissal for taking part in the same strike. However, if the consecutive occurrence of the two incidents was no more than happenstance, the relationship essential to incorporation of uncharged incidents into complaints is entirely lacking.

856 F.2d at 281 (footnote omitted).

We have no closer connection here than was present in *Galloway* or in *Drug Plastics.* The coincidence of the two separate violations during the same organizing campaign does not of itself create a close factual relationship. As we indicated in *Galloway* and *Drug Plastics,* some additional factual similarity is necessary before

---

**6.** The Board declined to find that the Company's written solicitation policy contained a "no-solicitation, no-distribution rule." Board Dec. at 3.

**7.** By contrast, in *Pioneer Hotel, Inc. v. NLRB,* 182 F.3d 939 (D.C.Cir.1999), cited by the dissent, animus was inferred where both alleged violations were committed at the direction of top management. *See Parsippany Hotel Management Co. v. NLRB,* 99 F.3d 413,

423 (D.C.Cir.1996) ("While it may be unreasonable to attribute to a corporation the anti-union sentiment expressed by low-level supervisors, *see Pittsburgh S.S. Co. v. N.L.R.B.,* 180 F.2d 731, 741 (6th Cir.1950), aff'd., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479 (1951), it is eminently reasonable to assume that high-level corporate managers speak on behalf of the company when they express anti-union animus.").

an allegation not timely charged can be exempted from the literal application of section 10(b)'s limitation period under the closely related test. And there is none here. To permit the Board to pursue the untimely charged 8(a)(1) violation based on the timely charged but, under *Galloway,* unrelated 8(a)(3) violation "would be tantamount to allowing the Board to enlarge its jurisdiction beyond that given it by Congress." *Galloway,* 856 F.2d at 279. That we may not do. We therefore grant Ross's petition with regard to the violation based on Simondi's admonition to Jumper.

### B.

■ Next we address the Board's finding that Ross violated section 8(a)(3) of the Act by discharging Jumper on account of his union activity. Because the finding is "supported by substantial evidence on the record considered as a whole," we must accept it as "conclusive." 29 U.S.C. § 160(e), (f).

Under the Board's established *Wright Line* test,

the general counsel must first show that the "protected activity was a motivating factor in the adverse employment decision." *Frazier Indus. Co., Inc. v. NLRB,* 213 F.3d 750, 755 (D.C.Cir.2000) (internal quotation marks omitted). If this prima facie showing is made, the burden shifts to the employer to demonstrate that "it would have made the adverse decision even had the employee not engaged in protected activity." *Vincent Ind. Plastics, Inc. v. NLRB.,* 209 F.3d 727, 735 (D.C.Cir.2000) (citing *Wright Line, Inc.,* 251 N.L.R.B. 1083, 1089, 1980 WL 12312 (1980)). In determining whether an employer had a discriminatory motive, "the NLRB may 'consider[ ] such factors as the employer's knowledge of the employee's union activities, the employer's hostility toward the union, and the timing of the employer's action.' " *Id.* (quoting *Power*

*Inc. v. NLRB,* 40 F.3d 409, 418 (D.C.Cir. 1994)).

*Traction Wholesale Ctr. Co. v. NLRB,* 216 F.3d 92, 99 (D.C.Cir.2000). The Board below based its finding of anti-union animus on management's knowledge that Jumper was participating in the ongoing union organization campaign and on the two other incidents of anti-union animus by management: Simondi's admonition to Jumper and Morrison's comments to the employees. Ross does not challenge the evidentiary basis of the Board's factual findings and we conclude they are sufficient to establish animus.[8] The Board further found Ross had failed to meet its burden under *Wright Line* of showing it would have discharged Jumper even if he had not been a union organizer. Specifically, the Board, like the ALJ, found that Ross had no rule requiring that time off be scheduled in advance that would support Ross's proffered alternative justification for firing Jumper. This finding too is supported in the record by the absence of any such rule from Ross's written time-off policies and by the testimony of a Ross employee that she had previously asked for and received time-off without prior approval.

For the foregoing reasons, Ross's petition for review is granted as to the no-solicitation violation and denied as to Jumper's discharge and the Board's cross-application for enforcement is denied as to the former and granted as to the latter.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, writing separately:

Although Ross does not raise the issue on appeal, I write separately to express my agreement with Board Members Hurtgen and Brame that section 8(c) of the National Labor Relations Act precludes considering Morrison's anti-union statements to employees that "they did not

---

**8.** While we doubt that Simondi's admonition is properly attributable to Ross, *see supra* pp. 673–74, we do not reach the question because Ross has not challenged its attribution.

need a union" and "he would do anything in his power to keep the union out of the building," App. 670, as evidence of Ross's anti-union animus in discharging Jumper. *See* Board Dec. at 8 (Hurtgen), 12 n.19 (Brame); *see also Lampi LLC,* 327 N.L.R.B. No. 51, 1998 WL 856130, at *7 n. 7 (1998) (Brame, dissenting). Section 8(c) provides:

**(c) Expression of views without threat of reprisal or force or promise of benefit**

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c). Because the Board specifically found that "[i]n the circumstances of this case, there is no sufficient objective basis for finding that employees would reasonably tend to view Morrison's statement as a threat," Board Dec. at 3, section 8(c) on its face plainly bars the Board not only from finding the speech was an unfair labor practice, which the Board majority acknowledged, but also from using it as "evidence of an unfair labor practice." Thus, the Board's decision to treat Morrison's statements as "evidence of animus establishing [Ross's] discharge motive," in the face of its finding

that the statement was "not unlawful in the context of this case," was in direct violation of section 8(c) and beyond the Board's authority. *See Medeco Security Locks, Inc. v. NLRB,* 142 F.3d 733, 744 (4th Cir.1998) (citing *Alpo Petfoods, Inc. v. NLRB,* 126 F.3d 246, 252 (4th Cir.1997)); *BE & K Constr. Co. v. NLRB,* 133 F.3d 1372, 1375–77 (11th Cir.1997); *Holo-Krome Co. v. NLRB,* 907 F.2d 1343, 1345–47 (2d Cir.1990); *NLRB v. Eastern Smelting & Refining Corp.,* 598 F.2d 666, 670 (1st Cir.1979); *Florida Steel Corp. v. NLRB,* 587 F.2d 735, 750–54 (5th Cir. 1979); *NLRB v. Rockwell Mfg. Co.,* 271 F.2d 109, 118–19 (3d Cir.1959); *Pittsburgh Steamship Co. v. NLRB,* 180 F.2d 731, 735 (6th Cir.1950); *see also International Union, United Automobile, Aerospace & Agricultural Implement Workers v. NLRB,* 363 F.2d 702, 707 (D.C.Cir.) (rejecting argument NLRB used section 8(c) protected statements as "as some evidence of the unfair labor practices themselves" and concluding statements were used only to "place[ ] ... other acts in context"), *cert. denied,* 385 U.S. 973, 87 S.Ct. 510, 17 L.Ed.2d 436 (1966).

RANDOLPH, Circuit Judge, concurring:

While I join all of Judge Henderson's opinion, I believe more should be said about the Board's treatment of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b),[1] and the confusion this

---

1. For ease of reference, § 10(b) is set forth in full:

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the

charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting

has caused in the Board's analysis and in some courts.

Much of the confusion stems from a failure to distinguish between the two separate functions § 10(b) performs. The statute first sets down a condition for the Board's exercise of jurisdiction. Only after someone—an employee or a union, for instance—has filed an unfair labor practice "charge" does the Board have jurisdiction to issue a "complaint" alleging unfair labor practices. *See NLRB v. Fant Milling Co.,* 360 U.S. 301, 307, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959). When a "charge" is filed, the Board investigates it and, if there is merit to the charge, frames a complaint, which the General Counsel then prosecutes. Disputes occasionally arise about whether the complaint has gone beyond the charge. Although § 10(b) contemplates that the "complaint" will "stat[e] the charges," the Supreme Court has held that the Board may, in formulating its complaint, take into account events occurring after the charge was filed, so long as the post-charge "unfair labor practices ... are related to those alleged in the charge and ... grow out of them," *National Licorice Co. v. NLRB,* 309 U.S. 350, 369, 60 S.Ct. 569, 84 L.Ed. 799 (1940); *Fant Milling Co.,* 360 U.S. at 309, 79 S.Ct. 1179.

Section 10(b) also functions much like a statute of limitations. No complaint may be "based" on unfair labor practices occurring more than six months prior to the filing of the charge. This proviso, added to § 10(b) in 1947, is at the heart of the case before us. The Board's current interpretation of the proviso is that the complaint may include uncharged unfair labor practices if they are "closely related" to misconduct that was timely charged. It is this "test" which Judge Henderson and I find not satisfied here, but which Judge Garland believes was met.

A few years after Congress added the § 10(b) proviso, Judge Jerome Frank, speaking for the court in *NLRB v. Dinion Coil Co.,* 201 F.2d 484 (2d Cir.1952), summarized several decisions as holding:

> (1) A complaint, as distinguished from a charge, need not be filed and served within six months, and may therefore be amended after the six months. (2) If a charge was filed and served within six months after the violations alleged in the charge, the complaint (or amended complaint) although filed after the six months, may allege violations not alleged in the charge if (a) they are closely related to the violations named in the charge and (b) occurred within six months before the filing of the charge.

*Id.* at 491. The Board adopted this formulation of the "closely related" test in decisions such as *Redd–I, Inc.,* 290 N.L.R.B. 1115, 1118, 1988 WL 214320 (1988). Later Board decisions, such as *Nickles Bakery,* broke the "closely related" test down into three parts:

> First, the Board will look at whether the otherwise untimely allegations involve the same legal theory as the allegations in the pending timely charge. Second, the Board will look at whether the otherwise untimely allegations arise from the same factual circumstances or sequence of events as the pending timely charge. Finally, the Board may look at whether a respondent would raise similar defenses to both allegations.

*Nickles Bakery of Indiana,* 296 N.L.R.B. 927, 928, 1989 WL 224354 (1989).

The most important thing to notice about *Nickles Bakery* is that in reformulating the test, the Board dropped out the requirement of § 10(b), as set forth in *Dinion Coil Co.* and the earlier cases, that the allegations added to the complaint

the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28.

29 U.S.C. § 160(b).

must concern unfair labor practices occurring within six months of the charge. Nonetheless, I believe that it is necessary for this requirement to be satisfied in each case. The filing of the charge serves to toll the six-month limitation period. *See Kelly–Goodwin Hardwood Co.*, 269 N.L.R.B. 33, 36–37, 1984 WL 36139 (1984). It follows that alleged illegalities occurring more than six months before the charge should be barred. In view of § 10(b) the Board may not reach back years before the charge is filed and add unfair labor practices to the complaint even if they are "closely related" to those alleged in the charge. The Board has not been entirely clear about this and we have compounded the confusion by expressing approval of the *Nickles Bakery* test in *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1018–19 (D.C.Cir.1995), even though *Drug Plastics* did not deal with the limitations proviso of § 10(b).[2]

Our latest pronouncement on § 10(b) is *Pioneer Hotel, Inc. v. NLRB*, 182 F.3d 939, 944 (D.C.Cir.1999), which plays a prominent role in Judge Garland's dissent. One cannot tell from reading our opinion in *Pioneer Hotel, Inc.* (or the Board's) when the charge in that case was filed. But the administrative record indicates that the unfair labor practice added to the Board's complaint occurred less than six months from the filing of the original charge. This at least makes the case consistent with the Supreme Court's holding in *Local Lodge No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 80

S.Ct. 822, 4 L.Ed.2d 832 (1960), commonly known as *Bryan Manufacturing*, a case the Board has too frequently ignored in recent years.

The facts of *Bryan Manufacturing* are important. A union and an employer executed a collective bargaining agreement on August 10, 1954, even though the union did not represent a majority of the employees. Contained in the agreement was a union security clause—that is, a clause requiring all employees to join the union. Under Board law, it was "an unfair labor practice for an employer and a labor organization to enter into a collective bargaining agreement which contains a union security clause, if at the time of original execution the union does not represent a majority of the employees in the unit." 362 U.S. at 413, 80 S.Ct. 822. Charges filed with the Board about a year after execution of the agreement alleged the union's lack of majority status in August 1954 "and the consequent illegality of the continued enforcement of the agreement." *Id.* at 414, 80 S.Ct. 822. Complaints to this effect followed. The Court held that the proviso in § 10(b) barred the complaints. Although execution of the agreement was itself an unfair labor practice, it occurred more than six months before the charges. As to the continuing enforcement of the union security clause, the only way to show its illegality was to prove that the union lacked a majority when it executed the agreement. This meant that the charges were, in the language of the proviso, "based" upon an unfair labor practice that

2. *Drug Plastics* dealt instead with the jurisdictional condition portion of the statute. The Board's complaint in *Drug Plastics*, filed on September 30, 1991, alleged unfair labor practices in February, April and June, 1991. The charge upon which the complaint was based was filed on July 15, 1991. The charge alleged only one instance of an unlawful discharge and did not mention the other six allegations eventually included in the complaint. *See Drug Plastics*, 44 F.3d at 1018–19. Three of the new allegations involved activities within six months of the July 15 charge and three did not. *See id.* at 1019. While the court could have held that some of the com-

plaint allegations were time-barred by § 10(b), it did not. Instead, it held that the Board lacked jurisdiction over *all six* additional unfair labor practices alleged in the complaint because it was "unable to connect the allegations in its complaint with the charge allegation." *See id.* at 1022. The court does mention the six-month limitation in the last line of its opinion, but only to note that the "period of § 10(b) has since elapsed," suggesting that any attempt to amend the complaint would fail because there was an inadequate factual nexus in the original charge. *Id.*

took place more than six months before the charges were filed. In so holding the Court quoted with approval the dissenting opinion of one Board member recognizing that " 'the continuing invalidity of the agreement is *directly related* to and is based solely on its initial invalidity,' " 362 U.S. at 423, 80 S.Ct. 822 (italics added). To the Court in *Bryan Manufacturing*, the direct relationship between the time-barred allegation and the timely allegation was a reason for barring the complaint.

In light of the language of § 10(b) and the need to adhere to the Supreme Court's parsing of that language in *Bryan Manufacturing*, I believe the Board errs whenever it permits complaints to go forward on allegations regarding unfair labor practices that occurred more than six months before the charge. Does that describe this case? Not necessarily. The original charge alleging a single act of unlawful discharge in August 1993 was filed October 21, 1993. An amended charge alleging additional unfair labor practices in May and June of 1993 was filed on March 3, 1994. These additional allegations fell outside the six-month time limit imposed by § 10(b), and were therefore barred unless the amended charge related back to the original charge, much as an amended pleading in civil litigation may relate back to the original pleading pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.[3] *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3, 104

S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam). So long as the Board's closely related test is kept within proper bounds,[4] it may serve the same function as Rule 15(c) with respect to § 10(b)'s six-month limitation period. I agree with Judge Henderson that in this case, the Board's test does not save the untimely charge.

GARLAND, Circuit Judge, concurring in part and dissenting in part:

I agree that substantial evidence supports the Board's finding that Ross Stores discharged an employee because of his support for the union. I respectfully dissent, however, from the conclusion that the Board's other finding—that Ross unlawfully admonished the same employee for soliciting for the union—must be set aside because the admonishment is not "closely related" to the discharge.

As the court acknowledges, section 10(b) permits prosecution of an untimely charge if it is "closely related" to a timely charge. *See* Op. at 672; *see also Pioneer Hotel, Inc. v. NLRB*, 182 F.3d 939, 944 (D.C.Cir. 1999); *Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 417 (D.C.Cir.1996); *Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1021 (D.C.Cir.1995). It is true that this circuit has previously held this test to require more than that the incidents arise during the same anti-union campaign, *see Drug Plastics*, 44 F.3d at 1021 (relying on *Nippondenso Mfg. U.S.A.,*

---

**3.** Rule 15(c) permits an amended pleading to relate back to the date of the original pleading if the claim or defense in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. CIV P. 15(c). The rule liberalized the practice under common law, reflecting the notice role played by pleadings and the interest in resolving claims on their merits rather than on the basis of technicalities. *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1471 (1990).

**4.** The reasons Congress inserted the six-month limitations should guide the Board. Like other statutes of limitations, *see 3M Co. v. Browner*, 17 F.3d 1453, 1457 (D.C.Cir.

1994), the § 10(b) proviso is designed to bar the consideration of events "after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." *Bryan Mfg.*, 362 U.S. at 419, 80 S.Ct. 822 (quoting H.R.REP. No. 80–245 at 40 (1947)). Statutes of limitation also provide a measure of repose, a point at which an entity is free to make plans without the specter of legal proceedings. *See 3M*, 17 F.3d at 1453. This aspect of repose is important in labor relations: the § 10(b) proviso promotes labor peace by "stabiliz[ing] existing bargaining relationships." *Bryan Mfg.*, 362 U.S. at 419, 80 S.Ct. 822.

*Inc.*, 299 N.L.R.B. 545, 1990 WL 133492 (1990)), and more than that they be close in time and involve the same employer and plant, *see id.* at 1020–21. But there is considerably more than that here.[1]

The Board's opinion makes clear that the two allegations are closely related. Indeed, the Board expressly used the earlier incident—in which David Jumper's supervisor caught him posting union literature and admonished him against doing so—as part of the basis for its finding that Jumper was discharged because of anti-union animus. *See Ross Stores*, 329 N.L.R.B. No. 59, at 2, 4, 1999 WL 820559 (1999). The incident underlying the untimely charge (the unlawful admonishment) was thus closely related to the incident underlying the timely charge (the unlawful discharge): the former provided, and proved, the motive for the latter.[2]

That factual connection puts this case on a par with *Pioneer Hotel, Inc. v. NLRB*, in which we recently rejected the argument that an amended complaint was insufficiently related to an original allegation under section 10(b). *See* 182 F.3d at 945. In *Pioneer Hotel*, the original allegation was that the employer discharged an employee for supporting the union. The amended allegation was that the employer had previously fired the same employee's supervisor for refusing an order to fire the employee for his union support. The two allegations were factually connected, we held, because the earlier incident was "[p]art of the evidence that Pioneer fired

[the employee] for union activism." 182 F.3d at 944–45. Just as the earlier incident in *Pioneer Hotel* was evidence that the employee was fired for union activism rather than as part of a neutral corporate restructuring, the earlier incident in this case was evidence that Ross Stores fired Jumper because of animus rather than absenteeism. *See also NLRB v. Fant Milling Co.*, 360 U.S. 301, 304 & n. 5, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959) (holding that an untimely allegation of an unlawful unilateral wage increase was sufficiently related to a timely refusal-to-bargain charge, because the wage increase "largely influenced" the Board's finding that an unlawful refusal to bargain had occurred).

That factual connection also distinguishes this case from *Drug Plastics & Glass Co. v. NLRB*. There, in concluding that untimely allegations of discriminatory statements were unrelated to a timely allegation of unlawful discharge, the court noted that the General Counsel's complaint made "no mention whatsoever" of the discharged employee "except in the single allegation" relating to the discharge. 44 F.3d at 1020. Here, by contrast, the complaint expressly noted that Jumper was the target of the unlawful admonition against soliciting for the union, and that Jumper was also the employee who had been unlawfully discharged. Complaint ¶¶ 5, 7; *see also FPC Holdings, Inc. v. NLRB*, 64 F.3d 935, 942 n. 5 (4th Cir.1995) (distinguishing *FPC* from *Drug Plastics* on the ground that, unlike the untimely allegations in *Drug Plastics*, those in *FPC*

---

1. Because, as discussed below, the Board's decision can be sustained under the test approved in *Drug Plastics*, there is no need to consider whether the Board could adopt a more expansive test by overruling *Nippondenso, see* Op. at 673, the NLRB decision upon which *Drug Plastics* relied. *See Drug Plastics*, 44 F.3d at 1021.

2. Although the court recognizes that "it is eminently reasonable to assume that high-level corporate managers speak on behalf of the company when they express anti-union animus," Op. at 674 n. 7 (quoting *Parsippany Hotel Mgmt.*, 99 F.3d at 423–24), the court

expresses doubt about attributing the supervisor's (Simondi's) admonishment to the company—apparently because it believes Simondi was not a sufficiently "high-level" manager. Op. at 675 n. 8; *see id.* at 673–74 & n. 7. That rationale is inconsistent with the fact that Simondi was Ross' operations manager. *Ross Stores*, 329 N.L.R.B. No. 59, at 3. Moreover, as the court notes, Op. at 675 n. 8, that rationale is foreclosed from our consideration because Ross Stores never challenged the attribution. *See Parsippany Hotel Mgmt.*, 99 F.3d at 418 (holding that court will not consider argument not raised in petitioner's opening brief).

directly involved the same employees as did the original charge).[3] Moreover, the Board held that the admonition allegation was closely related to the discharge allegation because it "alleged a coercive act manifesting *specific animus against Jumper*." *Ross Stores*, 329 N.L.R.B. No. 59, at 2 (emphasis added); *see also id.* at 3 (noting that relatedness was established by the need to investigate Ross' "prior indications of animus toward the organizing campaign *and in particular its dealings with Jumper* regarding that campaign") (emphasis added); *id.* at 4 (stressing that "the overbroad oral no-solicitation rule" was "dictated directly to Jumper").

In sum, because the two charges at issue in this case are closely related, and are not bound together simply by "the coincidence of the two separate violations [occurring] during the same organizing campaign," Op. at 674, the admonition allegation is not time-barred under section 10(b).

3. Jumper's initial, timely-filed charge can also fairly be read as encompassing the solicitation incident. In that charge, Jumper complained that he had been dismissed because of his "union involvement." Charge Against Employer ¶ 2 (Oct. 21, 1993). That union involvement surely included the solicitation incident, in which Jumper was admonished after his supervisor discovered him posting union literature in the men's room. *See Fant Milling*, 360 U.S. at 307, 79 S.Ct. 1179 (1959) ("A charge filed with the Labor Board is not to be measured by the standards applicable to a pleading in a private lawsuit.").