Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 22, 2003        Decided July 11, 2003

No. 02-1164
& No. 02–1203

PRECISION CONCRETE,
PETITIONER/CROSS–RESPONDENT

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT/CROSS–PETITIONER

SOUTHWEST REGIONAL COUNCIL OF CARPENTERS *F/K/A*
SOUTHERN CALIFORNIA–NEVADA REGIONAL COUNCIL OF
CARPENTERS, AND LABORERS LOCAL UNION NO. 872,
INTERVENORS

————

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Donald C. Zavala, Jr.* argued the cause for petitioner. With him on the briefs was *Gerard Morales.*

*Michael H. Carlin*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Margaret A. Gaines*, Supervisory Attorney. *Fred B. Jacob*, Attorney, entered an appearance.

*David A. Rosenfeld* was on the brief for intervenor.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Precision Concrete petitions for review of an order of the National Labor Relations Board holding the Company had violated §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3), and requiring the Company to reinstate striking workers who had unconditionally offered to return to work. We conclude that the Board was without jurisdiction to consider the alleged unfair labor practice it found was a cause of the strike, and hence its order of reinstatement must be set aside.

## I.  Background

This case arises out of a campaign by a coalition of unions, under the auspices of the Building Trades Organizing Project (hereinafter the Union), to organize the employees of Precision Concrete, a family-owned construction company based in Nevada. The Union began its drive in January 1997. Later that year it filed against the Company unfair labor practice charges that resulted in a settlement. The organizing drive continued. In early 1998, the Union filed a fresh set of charges alleging, among other things, that the Company had discriminated against certain employees for their cooperation with the Union in the settled case. In one such charge, filed March 20, 1998, the Union alleged:

On or about February 13, 1998, [Precision] interrogated employees, threatened employees with unspecified reprisals, and invited employees to resign their employment because they engaged in protected, concerted activities.

In July 1998, approximately 100 workers (a little more than half the Company's workforce) went on strike. The strike was not successful; many workers crossed the picket lines — leading to some ugly scenes that prompted a state court to issue an injunction against the Union — and the Company hired some replacement workers. By October, most of the strikers had offered to return to work, but the Company refused to take them back.

The Union filed a series of unfair labor practice charges relating to the strike. In a charge filed September 17, 1998, the Union alleged:

On or about August 25, 1998, [Precision] threatened employees with termination and physical violence because of their union activities.

After investigating these and other charges, the General Counsel of the Board filed a consolidated amended complaint alleging the Company had committed a variety of unfair labor practices before, during, and after the strike. The complaint included the following allegations relevant here:

On or about July 10, 1998, [Precision], by Juan Pulido, threatened to discharge employee, Valentin Mendez, because he wore a Union tee-shirt. . . . On or about July 10, 1998, [Precision], by Juan Pulido, told employee, Valentin Mendez, that he was being transferred because he wore a Union tee-shirt.

An Administrative Law Judge held, among other things, the Company had violated § 8(a)(1) of the Act on July 10, 1998 when its foreman, Juan Pulido, told Valentin Mendez he was being transferred to another assignment because Mendez was wearing a Union T-shirt, and Pulido "didn't want any of his team members wearing that kind of shirt." *Precision Concrete,* 337 N.L.R.B. No. 33, 2001 NLRB LEXIS 1060, *59

(Dec. 20, 2001) (*Order*). The ALJ further concluded the T-shirt incident was a cause of the strike and therefore all striking employees, upon their unconditional offer to return to work, were entitled to reinstatement with the Company. *Id.* at \*78*; see Gibson Greetings, Inc. v. NLRB*, 53 F.3d 385, 389 (D.C. Cir. 1995) ("an unfair labor practice striker who unconditionally offers to return to work is entitled to reinstatement"). The ALJ ordered the Company to cease and desist from violating the Act and to reinstate roughly 70 workers.

In exceptions before the Board, the Company argued the ALJ's reinstatement order could not stand because the T-shirt incident was not the subject of a timely charge and therefore, under § 10(b) of the Act, 29 U.S.C. § 160(b), the Board was precluded from holding it an unfair labor practice. The Board rejected that argument. Although it acknowledged that the T-shirt incident was not the subject of any unfair labor practice charge filed by the Union, the Board held that the incident was sufficiently related to the allegations in the March 20 and September 17 charges quoted above to satisfy § 10(b). *Order* at \*7–\*8. The Company now petitions for review, and the Board cross-petitions for enforcement of its order.

## II. Analysis

Section 10(b) of the National Labor Relations Act provides:

> Whenever it is charged that any person has engaged in . . . [an] unfair labor practice, the Board . . . shall have power to issue . . . a complaint stating the charges in that respect . . .: *Provided*, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . .

29 U.S.C. § 160(b) (emphasis in original).

This section of the Act performs "two separate functions." *Ross Stores, Inc. v. NLRB*, 235 F.3d 669, 677 (D.C. Cir. 2001) (Randolph, J., concurring). First, it "sets down a condition for the Board's exercise of jurisdiction," namely, that the

Board, which here acts through the General Counsel, may investigate and prosecute conduct only in response to the filing of a "charge," that is, a formal allegation made (by a union, an employer, or an employee) against a union or an employer. *Id.* Second, § 10(b) "functions much like a statute of limitations," restricting the proper subject of any complaint issued by the General Counsel to conduct about which a charge was filed within six months of its occurrence. *Id.*

As Judge Randolph noted in *Ross Stores*, failure to distinguish between those two functions can cause confusion, as it has done, alas, in the present case. Throughout this litigation, the parties and the Board have framed the § 10(b) issue as one of timeliness, when what is really at issue is the limitation upon the Board's ability to prosecute uncharged conduct.

The Company initially objected to inclusion of the T-shirt incident in the amended complaint on the ground that the incident occurred more than six months prior to the filing of the amendment. *Order* at *3. (The T-shirt incident occurred in July 1998; the General Counsel filed the amended complaint in March 1999.) The Board framed the issue as whether the "otherwise untimely" allegation was "closely related to a timely filed unfair labor practice charge." *Id.*

Section 10(b) does not, however, restrict the General Counsel to litigating conduct that occurred within six months of his filing a complaint. Indeed, as far as § 10(b) is concerned, the General Counsel may prosecute conduct about which a timely charge was filed whenever the General Counsel gets around to it. *See NLRB v. Dinion Coil Co.*, 201 F.2d 484, 491 (2d Cir. 1952) ("A complaint, as distinguished from a charge, need not be filed and served within the six months, and may therefore be amended after the six months"). All the statute requires with respect to timing is that the complaint be based upon an unfair labor practice charge filed within six months of the allegedly unlawful conduct.

The problem in the present case is that the T-shirt incident was never the subject of any charge. That omission impli-

cates the jurisdictional component of § 10(b): The Board (again, acting through the General Counsel) may not initiate a charge on its own; it may prosecute only conduct about which someone else has filed a charge. *See G.W. Galloway Co. v. NLRB*, 856 F.2d 275, 279 (D.C. Cir. 1988) ("By precluding the Board from initiating complaints without a corresponding charge from an outside party, Congress apparently intended to limit the Board's activities to those matters shown to be of concern to the very people the Act was designed to protect").

Whether one views the inquiry in terms of timeliness or of jurisdiction, however, the ultimate issue, at least in the present case, is the same: Is the T-shirt incident factually related to conduct (timely) charged by the Union? *Compare Galloway*, 856 F.2d at 280 ("when the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge"), *with Ross Stores*, 235 F.3d at 672 ("The NLRB has long construed section 10(b), with judicial approval, to permit prosecution of an alleged violation that was not timely charged if it is 'closely related' to the allegations in a timely filed charge"). Nevertheless, the distinction between the jurisdictional and temporal components of § 10(b) is not of merely academic interest because it affects the burden of proof upon the issue of relatedness. The Board considered the Company's timeliness claim as an "affirmative defense that the [Company] failed to prove." *Order* at *3. Without passing upon the validity of that characterization, we note that it is incumbent upon the Board to establish its authority to act, at least once its jurisdiction has been put in issue. *See, e.g., Lotus Suites, Inc. v. NLRB*, 32 F.3d 588, 592 (D.C. Cir. 1994) ("Because the Board has failed to (nor could it) establish a sufficient factual connection between the general terms of the charge and the specific allegations of the complaint, the Board's order must be set aside"); *Drug Plastics & Glass Co., Inc. v. NLRB*, 44 F.3d 1017, 1022 (D.C. Cir. 1995) ("Where the Board is unable to connect the allegations in its complaint with the charge allegation, we are unable to find that the Board has jurisdiction over the unrelated complaint allegations"). Because the issue before the Board in

this case was its jurisdiction, the Board erred by placing the burden of proof upon the Company.

Properly understood, the question for our resolution is whether the Board has established that it had jurisdiction to adjudicate the lawfulness of the T-shirt incident. Section 10(b) is not a straightjacket; the Board may, where appropriate, "include allegations in the complaint that are not specifically asserted in the charge." *Galloway*, 856 F.2d at 280. The Board does not, however, have "*carte blanche* to expand the charge as [it may] please, or to ignore it altogether." *Id.* (quoting *NLRB v. Fant Milling Co.*, 360 U.S. 301, 309 (1959)). A factual nexus between the charge and the complaint is required.

In *Fant Milling* the Supreme Court set the standard of relatedness as follows: the Board may prosecute unfair labor practices which, although not specifically alleged in a charge, are "related to those alleged in the charge and . . . grow out of them while the proceeding is pending before the Board." 360 U.S. at 309. We subsequently restated the standard — perhaps somewhat more loosely by omitting the requirement that the unfair labor practice "grow out of" the conduct charged — as requiring a "significant factual affiliation" between the charged conduct and the allegations in the complaint. *Galloway*, 856 F.2d at 280.

The Board has further refined the inquiry. In *Nickles Bakery of Indiana, Inc.*, 296 N.L.R.B. 927, 928 (1989), it adopted a "uniform requirement in all . . . cases that a complaint allegation be factually related to the allegation in the underlying charge." In order to determine whether the allegations of the complaint are factually related to those in the charge, the Board asks: (1) "whether the . . . allegations involve the same legal theory as the allegations in the . . . charge"; (2) "whether the . . . allegations arise from the same factual circumstances or sequence of events as the . . . charge"; and (3) "whether a respondent would raise similar defenses to both allegations." *Id.*

In *Drug Plastics*, 30 F.3d at 172–73, we upheld the Board's test pursuant to *Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council*, 467 U.S. 837 (1984), as a permissible inter-pretation of § 10(b). We have on several occasions, however, disagreed with the Board's application of the test — in *Drug Plastics* itself, as well as in *Ross Stores, Lotus Suites,* and *Galloway.* Two such cases are of particular significance here. In *Lotus Suites* we held that the Board may not "issue a complaint based upon a charge containing only a boilerplate § 8(a)(1) allegation . . . unbounded by specific facts" because, with the charge "so lacking in content" it becomes "[im]possi-ble sensibly to apply the test of 'substantial relation' between the factual allegations in the charge and those in the com-plaint." 32 F.3d at 592. Then in *Ross Stores* we rejected the argument that the second component of the Board's test is satisfied as long as both the allegations at issue arise out of the same union organizing campaign. 235 F.3d at 674 ("The coincidence of the two separate violations during the same organizing campaign does not of itself create a close factual relationship").

In the present case, the amended complaint alleged that in July 1998 a Precision foreman threatened to discharge or transfer an employee for wearing a Union T-shirt. The portions of the March 20 and September 17 charges upon which the Board relied to show this uncharged conduct was closely related to charged conduct stated that, on specific dates in February and August 1998, the Company had "threatened employees with unspecified reprisals, and invited employees to resign their employment" and "threatened em-ployees with termination and physical violence because of their union activities." *Order* at *6. The Board thought it sufficient that the allegations all "involve types of threatening conduct by the Respondent's unnamed officers and agents occurring within a common sequence of events in a half-year time span," all arise under the same section of the Act, and all implicate the same defenses. *Id.* at *7.

The Board's conclusion cannot possibly be squared with our previous decisions concerning the requirements of § 10(b). Although the charges at issue are not mere boilerplate, neither do they contain enough detail about the charged conduct to enable us "sensibly to apply the test of 'substantial

relation.'" *Lotus Suites*, 32 F.3d at 592. All we can glean from the record is that the March 20 charge involved interrogations and threats of reprisals by a foreman named Emilio Pinal at the Sunset and Valley View jobsite, and the September 17 charge concerned an incident on August 25 — more than a month after the T-shirt incident — in which Precision's president accosted strikers picketing "outside the gated confines of his [residential] neighborhood." Other than to observe that both of the charged incidents "involve types of threatening conduct," the Board has made no attempt to demonstrate that the T-shirt incident shares a "significant factual affiliation" with, *Galloway*, 856 F.2d at 280, let alone "grow[s] out of," *Fant Milling*, 360 U.S. at 309, the charged conduct.

The only link we can see is that the alleged incidents all occurred during the course of the Union's organizing drive in 1998. We have previously established, however, that a mere "coincidence of the two separate violations during the same organizing campaign" is not enough. *Ross Stores*, 235 F.3d at 674. Although the Board claimed to find more, *Order* at *5 (purporting to adhere to the "second factual factor as interpreted by the D.C. Circuit"), in the end it pointed only to the incidents having occurred "within a common sequence of events in a half-year time span," which adds nothing to the facts held insufficient in *Ross Stores*.

Because the Board failed to establish the requisite factual relationship between the charged conduct and the allegation in the complaint regarding the T-shirt incident, it did not have jurisdiction to adjudicate that incident. And the T-shirt incident was the sole violation upon which the Board relied in finding the Union struck in part because of an unfair labor practice. Therefore, the strike could not be characterized as an unfair labor practice strike and the strikers had no greater right to reinstatement than economic strikers. The Board's order of reinstatement must be set aside.

### III. Conclusion

For the foregoing reasons, we vacate the order of the Board insofar as it found the T-shirt incident an unfair labor

practice and required the Company to reinstate the striking workers. We grant the Board's cross-application for enforcement of the order with respect to the unfair labor practices not challenged in the Company's petition for review.

*So ordered.*