McGRAW–EDISON COMPANY,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 75–1257.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 23, 1976.
Decided April 19, 1976.

Paul S. Kuelthau, St. Louis, Mo., for petitioner. Glenn L. Moller, St. Louis, Mo., also entered an appearance for petitioner.

Alan Banov, Atty., N. L. R. B., Washington, D. C., with whom John S. Irving, Deputy Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., were on the brief for respondent.

Before MacKINNON and ROBB, Circuit Judges, and BRODERICK,* United States District Judge for the Eastern District of Pennsylvania.

Opinion for the court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

At issue here is a petition for review and a cross-application for enforcement of an order of the National Labor Relations Board which directs petitioner McGraw-Edison Co. to cease and desist from certain unfair labor practices and to take certain affirmative acts—such as the reinstatement of a discharged employee, the removal of written reprimands from the personnel files of certain employees, and the posting of a "Notice to Employees"—to correct the results of those practices.[1] The Board also

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. The order was adopted by the Board as proposed by the Administrative Law Judge:

directed a second election to replace one which was tainted by the company's

## ORDER

Respondent, McGraw-Edison Company, Kirksville, Missouri, its offices, agents, successors and assigns, shall:

1. Cease and desist from:

(a) Discouraging membership in, or activities on behalf of, International Union, United Automobile, Aerospace, Agricultural Implement Workers of America, UAW, or in any other labor organization, by discharging or otherwise threatening to discriminate against any employee in any manner with regard to their hire, tenure or other term or condition of employment because of their support for or activities on behalf of a Union.

(b) Interfering with, restraining and coercing its employees in the rights guaranteed them in Section 7 of the Act by:

Ordering supervisors to issue written warnings to employees suspected of engaging in union activities;

Instructing its employees not to accept union leaflets;

Maintaining surveillance over employees suspected of engaging in union activities;

Ordering employees to promptly report any union solicitation to Respondent;

Issuing permanent written warnings, contrary to past plant practice, to union sympathizers when suspected of engaging in union activities;

Otherwise threatening union sympathizers with discharge for engaging in union activities;

Harassing employees suspected of engaging in rest room "union meetings";

Promulgating an illegally broad No Solicitation rule;

Disparately enforcing our No Solicitation rule to ban pro-union solicitation but to encourage anti-union solicitation

Interrogating employees about union activities;

Soliciting grievances from union sympathizers with a promise to correct them;

Tightening up enforcement of plant rules in order to discourage union activities among its employees.

(c) In any other manner, interfering with, restraining or coercing our employees in the exercise of their rights to self-organization, to form, join or assist the above-named labor organization, or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purposes of collective bargaining or other mutual aid or protection or to refrain from any or all such activities.

2. Take the following affirmative action which is necessary to effectuate the policies of the Act:

(a) Offer to David L. Lewis immediate and full reinstatement to his former position, or if that position no longer exists, to a substantially equivalent position, without prejudice to his seniority or other rights and privileges and make David L. Lewis and Delbert L. Downen, who was discriminatorily denied overtime work from December 11, 1973, to February 16, 1974, whole for any loss of pay each may have suffered by reason of said discrimination against him by payment to each of a sum of money equal to that which he would have earned from the date of the discrimination against him to the date of Respondent's offer of reinstatement in Lewis' case and to February 16, 1974, in Downen's case, less his net earnings during such period in accordance with the formula set forth in *F. W. Woolworth Company,* 90 NLRB 289, with interest thereon at 6 percent per annum.

(b) Remove from each of the employee personnel files the written reprimands given to the five employees abovementioned who received such warnings between November 20, 1973, and January 3, 1974.

(c) Preserve and, upon request, make available to the Board or its agents for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all records necessary to analyze the amount of backpay due under the terms of this Order.

(d) Post at its Kirksville, Missouri, plant copies of the attached notice marked "Appendix." Copies of said notice on forms provided by the Regional Director for Region 17, after being duly signed by Respondent's authorized representative, shall be posted by Respondent immediately upon receipt thereof, and be maintained for 60 consecutive days thereafter, in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by Respondent to ensure that the notices are not altered, defaced or covered by any other material.

(e) Notify the Regional Director for Region 17, in writing, within 20 days from the date of this Order, what steps Respondent has taken to comply herewith.

It is also ordered that the election held on February 7, 1974, be and it is hereby, set aside and Case No. 17–RC–7401 is hereby remanded to the Regional Director of Region 17 for further processing.

It is further recommended that, unless Respondent notifies said Regional Director within 20 days from receipt hereof that it will take the action here ordered, the Board issue an order directing Respondent to take the action here ordered.

Dated at Washington, D. C.

Thomas S. Wilson
Administrative Law Judge
J.App. 38–40 (footnote eliminated).

actions.[2] Although we affirm the decision of the Board, we are of the opinion that the order should be modified to recognize more clearly the scope of the company's supervisory authority.

The facts of this case grow out of a union organizational campaign at petitioner's plant in Kirksville, Missouri, which employs approximately 350 persons in the manufacture of electric heaters and fans. The campaign was formally initiated on November 18, 1973, when an organizing committee of seven employees sent a letter to the company management announcing their intent to unionize the plant. Upon receiving the letter on the following day, plant manager Floyd Winter assembled his supervisors and read it to them. Winter then told the supervisors that he wanted to do everything that was legal and nothing that was illegal to stop the unionization.[3] Specifically, he called his supervisors' attention to three company rules which prohibited 1) deliberately restricting output, 2) soliciting of memberships or pledges, circulating petitions, or distributing handbills during work time, and 3) unauthorized posting or removal of notices from bulletin boards. Winter told the group that "we will give warning slips whenever necessary and whenever justified to keep people in their own departments and on their jobs and at their machines.[4]

During the next two months, the supervisors (including Winter himself) issued numerous written reprimands to pro-union employees; over the same period, only one anti-union employee received such a written warning, and then only after numerous oral warnings had had no effect.[5] The reprimands were given for violations such as leaving one's own department for other than company duties, using an office telephone for personal calls, congregating in the rest room, and welding without safety glasses. It is to be noted that all these infractions might under normal circumstances be permissible reasons for the issuance of a written warning. But the Administrative Law Judge (ALJ) found each to be part of a pattern of conduct[6] which was coercive of employees in the exercise of the rights guaranteed them by section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1970), and thus to violate section 8(a)(1) of that Act, 29 U.S.C. § 158(a)(1) (1970). Also found to be part of the company's coercion of its employees were, *inter alia,* the tightening up of plant rules in order to discourage union activity and the surveillance of employees suspected of engaging in such activities.

We agree that the company's course of conduct in this case, viewed as a whole, supports the Board's conclusion that petitioner interfered with its employees' statutory rights in violation of section 8(a)(1) and discriminated against several employees on account of their union activities or membership in violation of section 8(a)(3) and (1). The order which was drawn by the ALJ to remedy the situation is, however, overbroad, since it catches within its sweep not only prohibited conduct such as that which formed the basis for the finding of unfair labor practices here, but a number of otherwise valid management practices. For example, under most circumstances, it would be perfectly proper to reprimand an employee in writing for not wearing safety glasses while welding, especially where that employee had been warned orally to wear the glasses several days earlier.[7] The Board's order here could

---

2. J.App. 3–4.

3. J.App. 9.

4. *Id.* The Administrative Law Judge also found that Winter said that the organizers were not "that smart, I think we can get rid of them by giving them warning slips whenever necessary." *Id.*

5. J.App. 25.

6. Thus, the ALJ refers to an "aura of a continuing practice of interference, restraint and coercion." J.App. 35. *See also id.* at 24.

7. These are essentially the facts surrounding the written reprimand given to Roberta Thompson on December 7. *See* J.App. 15–16.

be broadly interpreted *to prohibit such a* written warning and numerous other supervisory actions which have no relation to union activity. Thus, it should be amended to affirmatively recognize the area in which the company can properly operate. The revision of the first part of the Board's order which appears in the margin [8] would meet the objection we have to its form.

*Judgment accordingly.*

---

**8.** We suggest the following additions to part I-b of the Board's order as reproduced in note 1 *supra*:

> Ordering supervisors to issue written warnings to employees suspected of engaging in union activities, *except for good cause unrelated to union activity*;
>
> \*    \*    \*    \*    \*    \*
>
> Maintaining surveillance over employees suspected of engaging in union activities, *except for good cause unrelated to union activity*;
>
> \*    \*    \*    \*    \*    \*
>
> Issuing permanent written warnings, contrary to past plant practice, to union sympathizers when suspected of engaging in union activities, *except that the company may change its practice in this regard upon proper notice and for reasons unrelated to union activity*;

> Otherwise threatening union sympathizers with discharge for engaging in union activities, *provided that such employees may be threatened with or actually discharged for good cause unrelated to union activity*;
>
> Harassing employees suspected of engaging in rest room "union meetings," *except that the company has a right to limit rest room time to what is reasonable if this is done for reasons unrelated to union activity*;
>
> \*    \*    \*    \*    \*    \*
>
> Tightening up enforcement of plant rules in order to discourage union activities among its employees, *except that the company has a right to do this for reasons unrelated to union activity.*

(The added language appears in italics.) The required "Notice to Employees" should also be changed to correspond with the revised order.