JUDGMENT

PER CURIAM.
These cases were considered on petition for review and cross-application for enforcement of an order of the National Labor Relations Board (“the Board”) and was briefed and argued by counsel. It is
ORDERED and ADJUDGED, by this Court, that the petition for review is denied, and the Board’s cross-application for enforcement is granted essentially for the reasons stated by the Board.
Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. See Fed. RApp. P. 41(b); D.C.Cir. Rule 41.

MEMORANDUM

Beginning in April 1997, the Carpenters District Council of Kansas City and Vicinity Local # 311 and # 978 (the “Union”) began a salting campaign against Exceptional Professional, Inc. (“EPI”), a nonunion contractor. The National Labor Relations Board found EPI violated Sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (3), by making coercive statements, instituting a discriminatory no-talking rule, suspending and laying off union-affiliated employees, discriminating against union-affiliated job applicants, and by instituting a drug and alcohol policy to discourage union activity. Consistent with the court’s deferential standard of review, see Jochims v. NLRB, 480 F.3d 1161, 1167 (D.C.Cir.2007), we deny the petition and grant the Board’s motion for enforcement of its order. Upon careful consideration we conclude EPI’s challenges to the Board’s order lack merit [1]; we discuss two challenges as illustrative.
EPI challenges the Board’s finding that it violated the Act based on unprotected statements by one of its foremen. The Board found that in early to mid-April 1997, then-covert salt Charles Allison *8 heard EPI foreman Steve Ceruzzi state that EPI did not have to worry about unions organizing EPI because EPI’s president was “a lot smarter than that and the union will never infiltrate EPI.” In late April, Ceruzzi told a group of employees that EPI knew that there was “a guy from the Union in the company and that there was no way in hell the Union was going to infiltrate this company.” The Board found Ceruzzi’s comments violated the Act[2] because they indicated to EPI employees that union organizing would be futile. EPI contends Ceruzzi’s comments were protected under the Act[3] and that the Board’s finding that the comments suggested that EPI would take unlawful action to render union organizing futile was unsupported by substantial evidence in the record.[4]
Given “the Board’s competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship,” NLRB v. Gissel Packing Co., 395 U.S. 575, 620, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); see Southwire Co. v. NLRB, 820 F.2d 453, 458 (D.C.Cir.1987), the court concludes that a reasonable factfinder could find that the statements implied that EPI would take unlawful action to thwart unionization, see Federated Logistics & Operations v. NLRB, 400 F.3d 920, 924-25 (D.C.Cir.2005). The test for whether the employer’s conduct violates the Act is whether it has a reasonable tendency to coerce; actual coercion is not necessary. United Servs. Auto Ass’n v. NLRB, 387 F.3d 908, 913 (D.C.Cir.2004); Avecor, Inc. v. NLRB, 931 F.2d 924, 932 (D.C.Cir.1991). Evidence before the Board indicated that in the months after Ceruzzi stated that the Union could not successfully organize EPI, Ceruzzi unlawfully interrogated an employee about his union affiliation and instituted a discriminatory no-talking rule. Likewise, EPI’s President told employees later in July — just days after unlawfully laying off several Union supporters — that it was probably going to cost him some money but he was not going to go union. Considering the circumstances, there was substantial evidence to support the Board’s finding that Ceruzzi’s statements in mid-April reflected EPI’s attitude that it would thwart unionization through unlawful means. See NLRB v. Dorothy Shamrock Coal Co., 833 F.2d 1263, 1265-66 (7th Cir.1987).[5]
*9 EPI also challenged the Board’s finding that it violated the Act because of its unlawful purpose in instituting anew drug program.[6] A change in discipline systems violates Section 8(a)(1) and (3) of the Act when the change is made for a retaliatory purpose. Gold Coast Restaurant Corp. v. NLRB, 995 F.2d 257, 267-68 (D.C.Cir.1993). EPI contends the Board’s finding is unsupported by substantial evidence in light of EPI’s proffer that it adopted the new rule so that it could bid on federal contracts and that its counsel had recommended instituting such a policy five years earlier. However, record evidence included the testimony of EPI’s President that EPI had previously bid on federal projects and had been aware of the need for such a drug and alcohol policy for at least a year. Given the evidence of a sudden change in past practice, the Board could justifiably find in light of the timing of EPI’s announcement that its promulgation of the drug testing rule was motivated by protected activity. See NLRB v. McClain of Ga., Inc., 138 F.3d 1418, 1427 (11th Cir.1998).
EPI urges the court to follow Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011-12 (4th Cir.1997). In that ease the Board found a violation of the Act in light of evidence that the drug testing rule was promulgated a week after a strike and that a representative of the employer stated that the “drug test policy was to get rid of ‘union guys,’ not drug users.” Id. at 1011. The Fourth Circuit acknowledged that there “may facially appear” to be substantial evidence that the policy was in response to union activity, id. at 1011-12, but noted that the Board’s finding of discriminatory enforcement was unsupported by any evidence, id. at 1012. The court then held that given the strong public policy justification for drug testing, a finding of unlawful purpose in this context must be supported by evidence of “discriminatory enforcement.” Id. at 1012; but see McClain, 138 F.3d at 1427. Whatever the wisdom of the Fourth Circuit’s distinction between drug testing and other workplace disciplinary rules, it is not compelled by Section 8(a)(3) of the Act, Board precedent, or the law of this circuit. This court has held that the Board may infer discriminatory motive based on factors including the employer’s anti-union animus, the timing of the employer’s action, and any disparity in the employer’s enforcement of the rule against union adherents and opponents; no single consideration need be dispositive. Teamsters Local Union 171 v. NLRB, 863 F.2d 946, 955 (D.C.Cir.1988); Gold Coast Rest. Corp., 995 F.2d at 264. Here, the timing of the abrupt change in discipline, combined with EPI’s anti-union statements and the doubtful credibility of its explanation for the timing, constituted substantial evidence to support the Board’s finding of unlawful purpose. Given our limited review of the Board’s finding, the court’s role is therefore at an end. See NLRB v. Truck Drivers Local Union No. 449, 353 U.S. 87, 96, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957). We would note, however, that the *10 Board’s cease and desist order does not preclude EPI from adopting a substitute drug policy unrelated to union activity. See McGraw-Edison Co. v. NLRB, 533 F.2d 1266, 1269 (D.C.Cir.1976); Gold Coast Rest Corp., 995 F.2d at 267.

. For example, the Board could justifiably find that EPI’s no-talking rule was discriminatory inasmuch as it applied only to union talk. Frazier Indus. Co., Inc. v. NLRB, 213 F.3d 750, 755, 759 (D.C.Cir.2000) enforcing 328 N.L.R.B. 717, 717, 725-26 (1999); Indus. Wire Prods., Inc., 317 N.L.R.B. 190, 190 (1995). To the extent EPI denies making certain statements, it ignores unrebutted testimony and offers ineffective attacks on the Board's crediting of the General Counsel's witnesses that fail to show the Board's credibility determinations are “hopelessly incredible” or “self-contradictory.” Teamsters Local Union No. 171 v. NLRB, 863 F.2d 946, 953 (D.C.Cir.1988); accord Cadbury Beverages, Inc. v. NLRB, 160 F.3d 24, 28 (D.C.Cir.1998). And in seeking to avoid responsibility for actions of its foremen and receptionist, EPI ignores evidence of their roles as supervisors or agents. See Progressive Elec., Inc. v. NLRB, 453 F.3d 538, 545-46 (D.C.Cir.2006); Empress Casino Joliet Corp. v. NLRB, 204 F.3d 719, 721-22 (7th Cir.2000); Oakwood Healthcare, Inc., 348 N.L.R.B. 686, 693-94 (2006).

. Section 8(a)(1) of the Act provides that it is an unfair labor practice for an employer to “interfere with, restrain, or coerce employees in the exercise of [their Section 7 rights].’’ 29 U.S.C. § 158(a)(1).

. Under section 8(c) of the Act, "an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a 'threat of reprisal or force or promise of benefit.’ " NLRB v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) (quoting 29 U.S.C. § 158(c)).

. "To meet the requirement of substantial evidence, the Board must produce more than a mere scintilla of evidence; it must present on the record such relevant evidence as a reasonable mind might accept as adequate to support a conclusion taking into consideration the record in its entirety including the body of evidence opposed to the Board's view.” Pacific Micronesia Corp. v. NLRB, 219 F.3d 661, 665 (D.C.Cir.2000) (internal citations, quotations and alterations omitted).

.EPI maintains in its brief that the Board's finding that the statements were unlawful was inconsistent with Park N Fly, Inc., 349 N.L.R.B. No. 16 (2007), Weldon, Williams & Lick, Inc., 348 N.L.R.B. 822, 823 (2006), and Ready Mix, Inc., 337 N.L.R.B. 1189, 1190-91 (2002). EPI’s failure to present those cases to the Board deprives the court of jurisdiction to consider this argument. See W & M Properties of Conn., Inc. v. NLRB, 514 F.3d 1341, 1345 (D.C.Cir.2008); 29 U.S.C. § 160(e). Moreover, we note EPI has not argued to the court that the Board’s finding was inconsis *9 tent with Ross Stores, Inc., 329 N.L.R.B. 573, 575 (1999), enforcement denied in part on other grounds, Ross Stores, Inc. v. NLRB, 235 F.3d 669 (D.C.Cir.2001).

. EPI announced on August 8, 1997 that it was putting into place a mandatory drug testing policy, effective September 1. Among other things, the new written policy provided that employees would be tested for drugs and alcohol after work related accidents, after being observed using a prohibited substance at work, after exhibiting "a severe and prolonged reduction in productivity,” or if the company had “any reasonable cause for testing him.” Additionally, the policy provided that the "company may select any employee at any time for a random drug or alcohol test.” Failure to submit to testing was to be "subject to discipline, including termination.”